THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. WILLIAM ZUPKOSKY, PLAINTIFF IN ERROR.

Argued May 20, 1941—Decided September 19, 1941.

For the defendant in error, *William A. Wachenfeld,* prosecutor of the pleas.

For the plaintiff in error, *Gerald T. Foley.*

The opinion of the court was delivered by

CASE, J. Zupkosky was found guilty in the Essex Oyer of murder in the first degree without recommendation. The case comes up on specifications for reversal as well as on assignments of error. The indictment was in the usual form and charged that defendant "did willfully, feloniously and of his malice aforethought kill and murder Alexander Sawczuk contrary to the form of the statute * * *." It is conceded that the defendant and his companion, Mike Sommers, had planned to rob a liquor store in Newark and were both on the premises in the act of committing the robbery when Sommers was killed by one of the clerks, whereupon defendant, in trying to escape, was felled while still in the store premises, and that in the ensuing scuffle defendant shot and killed, with a revolver which he had brought with him for the purposes of the robbery, Alexander Sawczuk. Zupkosky set up in defense, first, that he had abandoned the

robbery and was in retreat, wherefore he could not, as he contended, be convicted under the provisions of *R. S.* 2:138-1 (formerly 2 *Comp. Stat.* 1779, *pl.* 106), *infra,* and, second, that at the time he fired the fatal shot he was incapable of forming an intent and therefore could not, independent of that statute, be guilty of either first or second degree murder.

Defendant had a long record of crimes and convictions. On January 24th, 1941, he was on parole. Late that night or early the following morning he committed the act which resulted in the present conviction. According to his story told on the witness stand he entered the store with two drawn revolvers held with a menacing gesture; he compelled one of the clerks to open the cash registers and was in the act of gathering up the money when he heard a shot from the back room where Sommers had corralled some of the inmates of the store; at that point defendant dropped the money and shouted, "Come on, Mike. I am finished. Let's go," whereupon, and with the purpose of "getting out," he made for the front door. His testimony: "As I was running toward the front door the two storekeepers ran after me and they caught me near the doorway. I slipped. I remember slipping and then the scuffle started after I slipped. When I slipped I tried to get up and then somebody—I do not know who hit me in the back and I went forward. I do not remember exactly what I hit. I hit some part of the front part of the store. Then we started wrestling around and I was trying to do my best to get out of the store." On the witness stand defendant further testified that while he was trying to get away something hit him on the head and that after that he knew nothing until he was lying in the snow in front of the store and someone was lifting him up; but in his written statement, admitted in evidence, he said:

"As I was running towards the front door the two storekeepers ran after me and they caught me near the doorway. We tussled and they hit me over the head with bottles and I was trying to get away from them. I was trying to break away and while the tussling was still going on I pulled the triggers of the guns and a shot was fired from one of the guns which was the 32 calibre revolver. The two storekeepers were right close to me all the time."

The first point presented by the defendant on his brief is that the court erred in its definitions of abandonment of, or desistance from, an attempted robbery and erroneously restricted the scope of the determination by the jury of the issue of whether or not the attempted robbery had been terminated before the killing. It is not practicable to set out here all of the language of the court to which the defendant objects or all of the requests that the court refused to charge in this connection. The fulcrum of the argument is that the court made plain to the jury that the mere dropping of the money by the defendant and the shouting out that he was through and the attempting to escape from the grounds did not constitute an abandonment of the robbery without some commensurate change of heart on the part of the defendant; that the mere fact that the defendant was in the effort to escape when he was interfered with and when he shot the fatal bullet was not enough to constitute an abandonment unless the defendant had, in addition to his mental processes, evinced a reasonable appearance of abandonment as, for instance, throwing up hands and submitting to arrest; that every planned robbery included an escape and that an effort to escape did not of itself constitute an abandonment of the attempted crime. Chancellor Walker, speaking for this court in *State* v. *Gimbel,* 107 *N. J. L.* 235, said (at *p.* 240) :

"In the Turco case we held that when, incident to a robbery, one of the robbers kills a third party after the goods have been taken out of the possession of the owner (or his agents), while the robbery is complete, so as to render the perpetrators liable to conviction for it, yet the killing being done in an attempt to conceal the crime, protect the robbers in the possession of the loot and facilitate their flight, is so closely connected with the robbery as to be part of the *res gestæ* thereof, which may be an emanation of the act of robbery, and, although an act committed after the fact of robbery it still constitutes part of the *res gestæ* of that act, and is murder committed in the perpetration of a robbery within the meaning of our statute, and, consequently, murder in the first degree."

*R. S.* 2:138-1 (formerly *Comp. Stat.* 1779, *pl.* 106) provides that "if any person, in committing or attempting to

commit * * * robbery * * * or any unlawful act against the peace of this state, of which the probable consequences may be bloodshed, shall kill another; or if the death of anyone shall ensue from the committing or attempting to commit any such crime or act as aforesaid * * * then such person so killing as aforesaid shall be guilty of murder," and the following section, *R. S.* 2:138-2 (formerly *pl.* 107), provides that "Murder which shall be * * * committed in perpetrating or attempting to perpetrate * * * robbery * * * shall be murder in the first degree * * *." Whatever the stage which the robbery had reached at the time of the killing there clearly had been an attempt to commit robbery. The act of killing was done in the hot effort to escape from the place and to avoid arrest at the hands of persons upon whom, in their representative capacity, the felony had been committed; the time was only a few seconds after the crime of attempted robbery; the spot of the killing fifteen feet from the pilfered cash registers and within the four walls of the same room. It would be wholly contrary to the spirit of the statute to hold that a criminal may, by a few self-serving words, avoid the penalty which society imposes upon those who engage in crimes of violence that leave death in their wake. There can be no doubt that the killing was a direct, an immediate and a natural emanation of the attempted robbery. It was for just such a purpose, or so we may assume, that the defendant carried into the attempted robbery two revolvers which he still held in his hands and with one of which he snuffed out the life of an innocent man. The trial judge was, we believe, on sound ground in charging as he did. It was not for the defendant to renounce an accomplished fact, viz., an attempt at robbery, and at the same time reserve to himself a criminal's escape. He was not through with the crime while he was still on the scene, armed to kill, retreating from arrest with his victims in pursuit at less than arm's length.

Defendant secondly makes the point that the court was in error in submitting the question of felony murder to the jury. The point is based on the court's refusal to charge requests which presented the negative of the holding *supra*.

It is next said that the court erred in refusing to define, as requested, willful, deliberate and premeditated murder, and the argument is that while the court charged fully and correctly on the elements of willfulness, deliberation and premeditation, there was completely absent from the charge any reference to malice and, specifically, the court refused to charge six designated requests upon the subject. Counsel is in error in stating that reference to malice is completely absent from the charge. The court charged:

"If you find that the defendant decided to abandon the attempt to commit this robbery previous to the shooting, and by his conduct indicated an unequivocal withdrawal from the perpetration of the robbery, then he cannot be convicted of murder in the first degree unless the state proceeds further and establishes beyond a reasonable doubt that the killing was done willfully, after premeditation and with malice aforethought."

That was charged at the defendant's request and in the precise words requested. The court further charged:

"If the robbery had been in good faith abandoned, the defendant should not be held for first degree murder resulting from a subsequent homicide on proof of the shooting alone. In such a case, the state must show beyond a reasonable doubt that the killing was willful, deliberate, and done with malice aforethought."

It was not necessary for the court to multiply the variations of that theme after it had fairly stated the substance of the defendant's requests.

In defining the elements of murder the court charged the jury that the killing must have been done intentionally, voluntarily and of the defendant's own intent and will following such a period between the formation of the purpose to kill and the execution thereof as was sufficient for the defendant fully and clearly to conceive the design to kill and to proceed deliberately to execute the design. That was as favorable a charge upon the formation of intent, deliberation thereon and lapse of time as the defendant was entitled to have put to the jury. The rule is entirely settled in this state that "the fact of killing being first proved * * * the law

presumes it to have been founded on malice until the contrary appears * * *." *State* v. *Mangino,* 108 *N. J. L.* 475. "Malice, in the law, is manifested by the intentional doing of a wrongful act to the injury of another, without just cause or excuse." *State* v. *Silverio,* 79 *Id.* 482. "Malice, in its legal sense, means nothing more than an evil state of mind. The premeditated and deliberate design of a sane man to kill a human being, purposely executed without adequate legal justification, stamps such an act as the result of an evil state of mind; hence, an act conceived in malice. The law implies malice from the commission of the wrongful act." *State* v. *Moynihan,* 93 *Id.* 253 (at *p.* 258).

The point, as presented, simply restates the third, fourth, fifth, sixth, seventh and eighth of defendant's requests to charge and, without citation of authority or argument, asserts that the failure to charge them was error. The subject-matter of the third and fourth requests was, in our opinion, adequately covered in the charge. The fifth, sixth, seventh and eighth requests seek to ground the design to kill in a "calm," "sedate" and "unruffled" mind. We are not familiar with any rule of law approved in this state or consistent with our decisions which requires so dispassionate and cloistered an atmosphere for the conception of a design to kill. The point presents no error.

It is next said that the court erred in addressing the jury thus:

"Therefore, all the *res gestæ* of the crime, including the escape from the scene, are ordinarily part of the robbery or attempted robbery, as the case may be, within the meaning of the statute."

An escape is ordinarily a part of the crime. *State* v. *Gimbel, supra; State* v. *Metalski,* 116 *N. J. L.* 543; *State* v. *Mule,* 114 *Id.* 384; *State* v. *Turco,* 99 *Id.* 96; *State* v. *Hauptmann,* 115 *Id.* 412 (at *pp.* 427, 428). It is unlikely that a criminal would ordinarily plan a robbery without a preconceived method of approach and of escape. The court's remarks constituted merely an observation on the *ordinary* event. The court immediately—in the very next words—said:

"Now in the instant case the defendant claims the situation

is different from this" and proceeded to elaborate upon the defendant's contention, closing with this instruction: "That [viz., the determination of the defendant's acts and motives after the alleged announcement of abandonment] is for you to say, gentlemen; not me." It was within the court's discretion to comment upon the evidence and give the jury his impression thereon so long as the ultimate decision on disputed facts was left to the jury. *State* v. *Hauptmann, supra* (at *p.* 429); *State* v. *Overton,* 85 *Id.* 287.

It is further contended that the court erroneously charged the jury upon the subject of second degree murder. The defendant, as we have already said, was convicted of murder in the first degree without recommendation, upon a charge with regard to the elements of that offense which we have found correct in the only respects questioned. The jury convicted the defendant of murder in the first degree, upon evidence that, without undertaking to review, we consider fully supports that finding. Further, the verdict, as we formally decide in the next paragraph, was not against the weight of the evidence. Therefore, the judge's definition of murder in the second degree need not be examined or passed upon because, in the light of the jury's verdict, it could not have been harmful to the defendant. *State* v. *Mosley,* 102 *N. J. L.* 94; *State* v. *Noel,* 102 *Id.* 659, 674. Even if we assume the point to be well made the error is not ground for reversal.

Finally, it is said that the verdict was contrary to the weight of the evidence; a point which we regard as without substance and concerning which we deem it unnecessary to say more than we have already said.

The judgment under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 16.

*For reversal*—None.