252 N.J. Super. 222 (1991)
599 A.2d 600
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES McCLARY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 22, 1991.
Decided December 6, 1991.
*223 Before Judges MICHELS, O'BRIEN and HAVEY.
Lawrence S. Lustberg argued the cause for appellant (Wilfredo Caraballo, Public Defender, attorney; Alison Stewart Kerber, Designated Counsel, on the brief).
Jack J. Lipari, Assistant Prosecutor, argued the cause for respondent (Jeffrey S. Blitz, Atlantic County Prosecutor, attorney; Jack J. Lipari, of counsel and on the letter brief).
James McClary, appellant, submitted a supplemental pro se brief.
The opinion of the court was delivered by O'BRIEN, J.A.D.
*224 Defendant appeals from his conviction of first degree armed robbery (N.J.S.A. 2C:15-1), fourth degree possession of a weapon (N.J.S.A. 2C:39-5d), and third degree possession of a weapon for an unlawful purpose (N.J.S.A. 2C:39-4d). After merging the weapons offenses into the armed robbery, defendant was sentenced as a persistent offender to an extended term, pursuant to N.J.S.A. 2C:44-3a, of thirty years with a fifteen-year period of parole ineligibility. We affirm.
At approximately 6:30 a.m. on November 15, 1988, Lynne Baumgartner Guthrie (Guthrie) arrived at her place of business in Atlantic City. After proceeding through the warehouse, she went upstairs to her office on the second floor where she placed her purse and briefcase on her desk. She returned downstairs to speak to the foreman, Bill Preston (Preston), regarding the day's work. While she was downstairs, other employees arrived including Roberto Arroyo (Arroyo), Paul Cross (Cross), and John Hudnell (Hudnell), who were scheduled to begin their day's work at 7:00 a.m.
Shortly after 7:00 a.m., Guthrie went back upstairs to her office. Through sliding-glass doors she observed defendant standing at her desk going through her purse. When she asked defendant what he was doing, he replied he was looking for personnel, gesturing toward an adjoining office. Although Guthrie did not believe him, she wisely gestured to him there was no problem and left her office, returning downstairs quickly. Fortunately, she caught the employees before they left for their job sites and all four workers ran upstairs with her.
Guthrie was behind Arroyo, who asked defendant what he was doing, and defendant replied he was looking for personnel. Cross told him there was no such office and told defendant twice to lie down on the ground. At this point, defendant ran in the direction of a storage area on the second floor. Guthrie called the police and went downstairs to await their arrival. Preston, Cross, Hudnell and Arroyo followed defendant into the *225 storage area. Finally, Preston knocked defendant off balance and he stumbled toward a wall into some rubber which was stored there. As defendant kept moving toward a nearby ramp and doorway, Arroyo grabbed him around the neck, catching his own arm in a roll of rubber. At this point, Cross and Hudnell grabbed defendant, which enabled Arroyo to free himself. Hudnell grabbed defendant's right arm, Cross held defendant around the neck and shoulders from the left side, and Preston grabbed one of defendant's legs. According to Arroyo, defendant "was fighting the whole way, pushing, trying to kick, moving his arms and everything." Preston described defendant as "trying to punch and trying to kick everybody in sight." Arroyo then observed defendant reach underneath his shirt and pull out a knife, at which time Guthrie's purse fell to the floor. Defendant pulled the knife out with the blade down. Arroyo grabbed defendant's hand, twisted it, and pulled the knife out of his hand, throwing the knife behind defendant while defendant was still fighting. Finally, the four men got defendant face down on the floor and held him until the police arrived. An officer testified to finding the knife on the floor about five feet from defendant and the black purse, which he returned to the victim.
On this appeal, defendant raises the following legal arguments:
POINT I THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DEFENSE COUNSEL'S REQUEST TO CHARGE THE JURY ON THE LESSER-INCLUDED OFFENSE OF THEFT.
POINT II THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION FOR A NEW TRIAL.
POINT III THE TRIAL COURT ERRED IN FAILING TO PROPERLY INSTRUCT THE JURY ON THE ELEMENT OF FORCE (NOT RAISED BELOW).
POINT IV THE SENTENCE IMPOSED REPRESENTS AN ABUSE OF THE TRIAL COURT'S DISCRETION AND MUST BE VACATED.
A careful review of the record and a consideration of the contentions by defendant in light of the applicable law satisfies us that all of said contentions and issues raised clearly are without merit. R. 2:11-3(e)(2).
*226 The only issue with any semblance of merit concerns the trial judge's denial of defendant's request that he charge theft as a lesser included offense. In support of his contention, defendant cites our decision in State v. Jordan, 240 N.J. Super. 115, 118-119, 572 A.2d 676 (App.Div.), certif. denied, 122 N.J. 328, 585 A.2d 345 (1990), where we said theft is both a lesser included offense and an essential element of robbery. Id. at 119, 572 A.2d 676. Although the circumstances presented in Jordan are similar to those presented here, we are satisfied that the principles of Jordan did not require a charge of theft as a lesser included offense in this case.
In Jordan, defendant had been observed shoplifting merchandise at a Bradlees store by two store detectives, Berger and Brosmer. They notified another store detective, Polk, that Jordan was attempting to leave the store. After Polk showed Jordan his identification and asked if he had a receipt for the merchandise, Jordan threw a punch at Polk. When Polk avoided Jordan's punch, Jordan swung the bag containing the stolen merchandise and ran past him. However, another store employee grabbed Jordan. Although he continued to struggle, Jordan was finally subdued and brought back into the store. Once inside the store, Jordan pushed Polk out of the way and "bodyslammed" Berger. When Brosmer stepped in his way, he punched her in the mouth. As employees attempted to subdue Jordan and put handcuffs on him, he full-force punched Brosmer between her legs causing severe pelvic trauma, and he punched Berger in the stomach. Finally, he was again subdued.
Under those facts, we concluded that theft of movable property and shoplifting should have been charged as lesser included offenses. We based that conclusion on our view that there was a rational basis in the evidence to convict defendant of either of those offenses and to acquit him of second degree robbery. We said,

*227 The jury might have rejected the State's proofs that defendant used force against Polk when he was stopped after leaving the store and it might have found that defendant's infliction of bodily injury on Brosmer and Berger after he was returned to the store occurred after flight had been concluded and defendant was in custody. Cf. State v. Mirault, 92 N.J. 492, 500-501, 457 A.2d 455 (1983). Thus, the jury might have found that the bodily injury to the two store detectives was not inflicted in the course of committing a theft. While such a result would have been extraordinary, it nevertheless could have been reached by the jury. Consequently, the trial court should have instructed the jury on the lesser-included offense of either theft of movable property or shoplifting.
In reaching that result, we noted that the applicable standard for determining whether the trial court should charge a jury with respect to a lesser included offense is set forth in N.J.S.A. 2C:1-8(e) of the New Jersey Code of Criminal Justice (Code):
The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.
Where the evidence provides a rational basis upon which the defendant may be found guilty of an included offense and not guilty of the encompassing offense, it is reversible error for the court to refuse upon request to charge the jury with respect to the included offense. Id. at 118-119, 572 A.2d 676 and cases cited. We further observed that in State v. Crisantos (Arriagas), 102 N.J. 265, 278, 508 A.2d 167 (1986), our Supreme Court emphasized that the code formulation of the rational-basis test is more restrictive than the pre-code Powell guidelines under which a charge of a lesser included offense was proper when there existed "a scintilla of evidence" with respect to that charge. Nonetheless, Crisantos noted that the rational-basis test "imposes a low threshold ... for permitting a charge on a lesser included offense." Id.
The Code has broadened the concept of robbery. It specifically includes within the phrase "in the course of committing a theft" both the attempt before and immediate flight after the theft. This was not the common law rule, but it has been adopted by statute or by decision in most jurisdictions. Cf. State v. Zupkosky, 127 N.J.L. 218, 222, 21 A.2d 771 (E. & A. 1941) (shooting of clerk in pursuit of defendant outside store *228 sustains felony murder based on robbery); "[H]e was not through with the crime." See State v. Mirault, 92 N.J. 492, 500, 457 A.2d 455 (1983). In the latter case, our Supreme Court also noted that the word "another" would include an investigating police officer attempting to apprehend a criminal after a theft, as it would include Arroyo and the other workers who subdued defendant in this case.
Thus, the issue in this case is whether flight after the theft had concluded and defendant was in custody when he tried to punch and tried to kick everybody in sight and pulled out the knife from underneath his shirt, which Arroyo observed and took from him. We conclude it had not. Furthermore, there was no rational basis upon which a jury could conclude that defendant had not used force upon another. N.J.S.A. 2C:15-1a. In fact, during the entire flight and apprehension defendant retained the purse which he had stolen. It fell out when he displayed the knife in support of his efforts to avoid apprehension. We conclude that in this case, as distinguished from the Jordan case, the flight had not concluded and, indeed, all of defendant's actions testified to by the witnesses were part and parcel of the immediate flight from the theft of the purse, and thus there was no rational basis upon which defendant could be found guilty of an included offense of theft from the person and not guilty of the encompassing offense of robbery or armed robbery.[1] We find no error in the denial of defendant's request that theft be charged as a lesser included offense.
Defendant's motion for a new trial was properly denied. Evidence of defendant's guilt was overwhelming and there was obviously no miscarriage of justice under Rule 2:10-1.
Although we agree with defendant that appropriate and proper charges are essential to a fair trial, State v. Green, 86 *229 N.J. 281, 287, 430 A.2d 914 (1981), we disagree that it was necessary for the trial judge to define the word "force" in his charge on robbery. Furthermore, we note there was no exception to the charge based upon the alleged omission. See Rule 1:7-2. Failure to object to the omission supports the conclusion that counsel did not find the absence of a definition of force in the judge's charge to be of any consequence, nor do we.
Although the sentence imposed upon defendant was substantial, there is no question he qualified for the imposition of an extended term as a persistent offender under N.J.S.A. 2C:44-3a. The sentencing judge in this case followed the procedure outlined by the Supreme Court in State v. Dunbar, 108 N.J. 80, 527 A.2d 1346 (1987). The judge did not impose the presumptive term of fifty years required by N.J.S.A. 2C:44-1f(1), in recognition of the fact that defendant's crime started out as a theft, but elevated to robbery during the course of his flight. We find no merit to defendant's contention that this display of leniency precluded the court from imposing a period of parole ineligibility pursuant to N.J.S.A. 2C:43-7b. We recognize that although the language of N.J.S.A. 2C:43-6b is not repeated in N.J.S.A. 2C:43-7b, our Supreme Court has concluded that the Legislature intended the same balancing process, i.e., that the court be clearly convinced that the aggravating factors substantially outweigh the mitigating factors. State v. Dunbar, supra, 108 N.J. at 92, 527 A.2d 1346. Although not using the specific language, it is clear the trial judge was clearly convinced that the aggravating factors substantially outweighed the mitigating factors since he found there were no mitigating factors. His conclusion that the maximum sentence of life imprisonment or the presumptive extended term of fifty years were not necessary because the event started out as a theft was not defining a mitigating circumstance, but simply a recognition of the crime for what it was. We find no inconsistency in the finding of no mitigating circumstances and the imposition of a period of parole ineligibility at the same time *230 that the judge imposed the minimum extended term of thirty years.
Affirmed.
NOTES
[1] We note that the judge accepted defendant's argument that the jury may disbelieve Arroyo's and the police officer's testimony about the knife and thus charged second degree robbery.