790 A.2d 928 (2002)
347 N.J. Super. 469
STATE of New Jersey, Plaintiff-Respondent,
v.
Shaun A. GRISSOM, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 24, 2002.
Decided February 7, 2002.
*929 Lorraine L. Posner argued the cause for appellant, (Brown and Brown, attorneys; Raymond A. Brown and Alan Dexter Bowman, of counsel and on the brief).
H. John Witman, III, argued the cause for respondent, (David Samson, Attorney General of New Jersey, attorney; Mr. *930 Witman, Deputy Attorney General, of counsel and on the brief).
Before Judges NEWMAN, FALL and AXELRAD.
The opinion of the Court was delivered by AXELRAD, J.T.C. (temporarily assigned).
Defendant, Shaun Grissom, appeals his criminal conviction for robbery and weapons offenses and seeks reversal and a new trial.
Tried to a jury, defendant was convicted of first-degree robbery, N.J.S.A. 2C:15-1 (count one); fourth-degree aggravated assault, N.J.S.A. 2C:12-1b(4) (count two); third-degree unlawful possession of a weapon, a handgun, N.J.S.A. 2C:39-5b (count three); second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4a (count four); and fourth-degree unlawful possession of hollow point bullets, N.J.S.A. 2C:39-3f (count five).
At trial, after the State rested, defense counsel moved for dismissal of the first-degree robbery charge, the fourth-degree aggravated assault charge, and the second-degree possession of a weapon for an unlawful purpose charge, or in the alternate, for instructions as to self-defense and as to the lesser-included offense of theft of services. The trial judge denied defense counsel's requests.
The trial judge sentenced defendant to sixteen years imprisonment for armed robbery with a No Early Release Act (NERA) minimum of thirteen years, seven months and nine days. Defendant received concurrent terms of five years for unlawful possession of a handgun and eighteen months for possession of hollow point bullets. The other charges were merged into the armed robbery conviction.
According to the trial testimony, this case involved a theft of a taxi cab fare which turned into a first-degree robbery when defendant pulled a handgun on the taxi driver. Defendant asked the taxi driver, Pierre Loradin, to drop him off at the Valley Fair Supermarket entrance inside the gate, near the intersection of Colt Street and Chancellor Avenue in Irvington. Prior to arriving there, defendant asked the driver to let him out at the corner, about forty to fifty feet before the entrance to the market. The driver pretended he did not understand defendant and dropped him at the originally-requested destination inside the gate at Valley Fair, explaining at trial that it was his practice to drop off passengers where other people are present. The driver demanded a fare of $6, at the rate of about one dollar a block since the cab does not have a meter. Defendant claimed he only had $5 and appeared to look through his pockets for the fare.[1] Then he abruptly exited the cab without paying the fare and began walking away, turning the corner in the direction of "the back of Valley Fair."
The driver followed defendant in his cab, and upon reaching him, without exiting the vehicle, asked "where is the money?" Defendant then pointed a handgun at the taxi driver's face and asked, "are you looking for money?" The driver pulled away.
Within a block of the supermarket, the taxi driver flagged down an Irvington police officer and told her what had happened. She followed the cab driver to the supermarket. The officer spotted defendant *931 crouched at the rear of a van parked near an intersection. When defendant saw her turning, he ran but was eventually apprehended. Defendant was identified by the driver at the scene. The officers found no weapons on defendant. A post-arrest search of the area yielded discovery of a 9mm handgun with a hollow point round in the firing chamber and other hollow point rounds in the magazine in the rear wheel of the van where the officer first saw defendant.
About four hours earlier that morning an Irvington police officer searched a car pursuant to an unrelated charge against defendant that was not at issue in this case, and in the glove compartment found a 9mm magazine with ten rounds of 9mm ammunition. The car was registered to defendant. Defendant had no permit to carry a handgun.
On appeal, defendant seeks reversal of his convictions on the following grounds:
POINT I
THE TRIAL COURT DENIED APPELLANT A FAIR TRIAL IN ADMITTING OTHER CRIMES EVIDENCE ABSENT ANY INSTRUCTION TO THE JURY RESPECTING THE PROPER CONSIDERATION OF IT.
POINT II
THE TRIAL COURT ERRED IN FAILING TO CHARGE THE JURY AS TO THE DEFENSE OF SELF-DEFENSE.
POINT III
THE TRIAL COURT'S ERROR IN REFUSING TO CHARGE SELF-DEFENSE INDUCED ITS ADDITIONAL ERROR IN REFUSING TO CHARGE THE LESSER-INCLUDED OFFENSE OF THEFT OF SERVICES.
The State's position in this case was that the theft of services was turned into a robbery when defendant drew a handgun and pointed it at the taxi driver. Defendant does not claim error in the judge's decision to give an armed robbery instruction. He contends that the trial court committed reversible error in denying his request to also charge theft of services, N.J.S.A. 2C:20-8, as a lesser-included offense of first-degree robbery. Defendant concedes that there was more than ample evidence for a theft conviction, but urges that the theft was complete when he exited the cab so there was a rational basis to acquit him of armed robbery.
Accordingly, the jury should have been given the opportunity to find a lesser-included offense. We agree and reverse defendant's robbery conviction (count one) and remand for a new trial. We affirm the other convictions.
To be considered a lesser-included offense, a crime must either be established by proof of the same or less than all the facts used to establish the greater charge, N.J.S.A. 2C:1-8d(1), or it must differ from the crime charged only through a lower degree of risk of injury to the victim or a lower degree of culpability of the defendant, N.J.S.A. 2C:1-8d(3). See, e.g., State v. Smith, 136 N.J. 245, 249-50, 642 A.2d 978 (1994).
The applicable standard for determining whether the trial court should charge a jury with respect to a lesser-included offense is set forth in N.J.S.A. 2C:1-8e of the New Jersey Code of Criminal Justice:
The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.
In State v. Crisantos, 102 N.J. 265, 277 n. 10, 508 A.2d 167 (1986), the Court interpreted *932 N.J.S.A. 2C:1-8e, consistent with the Model Penal Code, to also require a rational basis to acquit of the greater charge. The Official Comment to N.J.S.A. 2C:1-8(e) references this dual requirement:
[W]here the defendant makes the request and the State objects, the facts proved at trial should be evaluated to ensure that there is a rational basis for a jury to reject the greater charge and convict of the lesser; wherever there is a such a basis, the lesser charge should be given. It should be noted that although 2C:1-8(e) speaks literally only of a rational basis to convict on the lesser charge, the provision has been read to require, as well, a rational basis to acquit on the greater charge. [Citations omitted].

[Cannel, New Jersey Criminal Code Annotated, comment 12 on N.J.S.A. 2C:1-8(e) (2002).]
Theft of services can be a lesser-included offense of robbery. Cf. Smith, supra, 136 N.J. at 250, 642 A.2d 978. In Smith, supra, the defendant, a passenger in a taxi, was charged with first-degree robbery, with the State alleging that the defendant had threatened the taxi driver with a knife and had robbed him of $120. Ibid. Defendant, on the other hand, denied that he was armed, claimed that he neither threatened nor robbed the driver, and alleged that "he did nothing more than `cheat[] him out of the cab fare by not paying him.'" Ibid. The Court held:
The operative ingredientdeception in the one case, the threat of immediate bodily injury in the otheris sharply different for each offense. In this case, because the element of deception is an essential ingredient of obtaining services without payment but is not required for a robbery conviction, theft of services cannot be said to be a lesser-included offense of robbery.

[Ibid.]
Here, unlike in Smith, supra, the facts are not in dispute and the circumstances supporting a lesser-included offense of theft of services are completely encompassed by those supporting a robbery conviction.
Under N.J.S.A. 2C:15-1, a person is guilty of robbery if, in the course of committing a theft, he
(1)Inflicts bodily injury or uses force upon another; or
(2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
(3) Commits or threatens immediately to commit any crime of the first or second degree.
An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.
Because it is undisputed that a theft did in fact occur when defendant Grissom exited the cab without paying the fare, the question is whether he threatened Loradin, the taxi driver, with bodily force "in the course of committing a theft," i.e., "in immediate flight after the ... commission." In State v. Mirault, 92 N.J. 492, 494, 457 A.2d 455 (1983), the Court was presented with circumstances in which defendant fought with a police officer who was called to the scene by an individual who noticed, upon returning home, that her front door had been forced open. In analyzing whether the theft was complete prior to the order to "freeze" and ensuing altercation with the officer, the Court looked at the analogous context of felony murder, noting that the question in each felony murder case related to robbery is "whether the offender, before inflicting the *933 injury that causes death, has reached a point of at least temporary safety ... or become subject to `complete custody.'" Id. at 500-01, 457 A.2d 455 (citing People v. Smith, 232 N.Y. 239, 133 N.E. 574, 575 (N.Y.App.Div.1921)). The court found that defendant had not reached a point of at least temporary safety because defendant engaged in a fight with the police officer at the scene of the theft. Id. at 501, 457 A.2d 455. It concluded that the "continuous and violent struggle [that] took but a few minutes, never moved behind the scene of the [theft] ..., and never found the defendant in complete custody until the backup police arrived," and that rendered the robbery and aggravated assault "part of a continuous transaction." Ibid. Thus, the assault took place "in the course of committing a theft," and elevated the charge of theft to robbery. Ibid. (citing N.J.S.A. 2C:15-1).
In State v. Jordan, 240 N.J.Super. 115, 117, 572 A.2d 676 (App.Div.), certif. denied, 122 N.J. 328, 585 A.2d 345 (1990), defendant, after being confronted outside of a store from which he stole merchandise, unsuccessfully "threw a punch" and then swung his bag of stolen items at a store detective. After defendant was brought back into the store, he pushed the detective away and "body-slammed" and punched two other detectives. Ibid. We found reversible error in the trial court's refusal, after request, to charge the jury with the lesser-included offenses of theft of movable property and shoplifting because there was a rational basis in the evidence to convict defendant of either of those offenses and to acquit him of second-degree robbery. Id. at 120-21, 572 A.2d 676. We said,
[t]he jury might have rejected the State's proofs that defendant used force against [the store detective] ... when he was stopped after leaving the store and it might have found that defendant's infliction of bodily injury on [the other detectives] ... after he was returned to the store occurred after flight had been concluded and defendant was in custody. Cf. State v. Mirault, 92 N.J. 492, 500-501, 457 A.2d 455.... Thus, the jury might have found that the bodily injury to the two store detectives was not inflicted in the course of committing a theft. While such a result would have been extraordinary, it nevertheless could have been reached by the jury.
....
Even though the evidence that defendant was guilty of second degree robbery is overwhelming, we are constrained to reverse defendant's conviction for second degree robbery and remand the matter for a new trial on that charge.

[Ibid.]
In State v. McClary, 252 N.J.Super. 222, 225, 599 A.2d 600 (App.Div.1991), certif. denied, 130 N.J. 6, 611 A.2d 646 (1992), we were presented with circumstances in which defendant, after fleeing the victim's office with her purse, fought with four of the victim's employees who had continuously pursued him from the office to another location in the victim's workplace. We held that:
[I]n this case, as distinguished from the Jordan case, the flight had not concluded and, indeed, all of defendant's actions testified to by the witnesses were part and parcel of the immediate flight from the theft of the purse, and thus there was no rational basis upon which defendant could be found guilty of an included offense of theft from the person and not guilty of the encompassing offense of robbery or armed robbery.

[Id. at 228, 599 A.2d 600.]
When a lesser-included offense charge is requested by defendant, a "trial court is *934 obligated, in view of defendant's interest, to examine the record thoroughly to determine if the rational-basis standard has been satisfied." Crisantos, supra, 102 N.J. at 278, 508 A.2d 167. Here, the trial court did not have to find that defendant's flight had concluded in order to charge the jury with the lesser-included offense of theft of services. It is sufficient if the jury might have rejected the State's proofs and found defendant's claim that the theft was complete after he exited the taxi was rationally supported by the evidence, even if the evidence of robbery is "overwhelming." Jordan, supra, 240 N.J.Super. at 121, 572 A.2d 676.
The relevant portions of Loradin's testimony that deal with the flight are as follows:
Q: [on direct examination] What happened at that point when he got out of the cab?
A: So I ask him you don't pay. He didn't answer me. Inside of Valley Fair, he go to the corner. There's the corner in front of the door. There's a corner like this, he go to the back of Valley Fair.
Q: What did you do when you saw him go that direction?
A: So I turned to see what he's doing, he didn't pay. When I went to him, while I'm in my car, I asked him where is the money.
Q: So I'm clear on this. You drove up to where he was going?
A: Yes.
Q: Did you ever get out of your car?
A: No.
Q: So you pulled up and what happened at that point?
A: And he pulled a gun like that. He said are you looking for money? I said alright. I turn to right, I got out.
....
Q: [on cross-examination] You announced the fare to be six dollars. He said he didn't have the full 6 dollars according to you and you were waiting for him to pull out some moneyhe seemed to be going in his pockets?
A: That's true, yes.
Q: And then I think you said the next thing you knew he was out of the car so you didn't actually see him get out, did you? You suddenly noticed he's out of the car and he's not paying?
A: He's not paying and he gets out.
Q: You saw him actually open the door and get out?
A: Yes, sir.
Q: Am I correct in that?
A: Yes, sir.
Q: Now at that time did you get out of yourwhen you saw him getting out without giving you any money, did you get out of your car then?
A: No.
Q: The person began to walk away, isn't that correct?
A: That's true.
Q: After [he] walked some distance, you began to drive in the same direction that person was, is that correct?
A: Yes, sir.
Q: Now, were you driving fast? When you drove after that person who didn't pay you, did you drive fast?
A: I drive to get out, not fast.
Q: Whenthen you had to turn a corner to go to around the side or back of the supermarket, isn't that correct?
A: That's true.
*935 Q: So youI'm having a little trouble understanding, let me clarify something. You dropped him off in front of the supermarket where shoppers are coming in and going out?
A: That's true.
Q: And then when the passenger began to walk away, you drove around to the back of the supermarket where you confronted him?
A: That's true.
....
Q: [on cross examination] Then you drove around to the back of the supermarket and you asked him again about the fare, isn't that correct?
A: Yes, sir.
There is sufficient evidence in the record from which a jury could conclude that defendant's pointing of his handgun at the taxi driver was part of the continuous transaction of refusing to pay the fare and accomplished before his flight was complete, and convict him of first-degree armed robbery. However, there is also sufficient evidence in the record from which the jury could have concluded that defendant reached a point of at least temporary safety as per Mirault and Crisantos, supra, when he exited the cab and that his pointing of the gun was a separate offense. After defendant was dropped off in the front of the supermarket, he "walked away," apparently turned the corner of Valley Fair, and was subsequently pursued by Loradin who "confronted him" from the cab at the "back of the supermarket." Had the jury been given the lesser-included offense instruction, there was a rational basis upon which defendant could have been found guilty of an included offense of theft of services and acquitted of the offense of armed robbery.
We turn now to defendant's claim that the trial court also committed reversible error in admitting evidence that a second magazine loaded with 9mm ammunition was found in defendant's motor vehicle four hours before the taxi cab incident. We note that defense counsel did not raise this "other crimes" argument below and, in fact, conceded the admissibility of this evidence. At a conference conducted just after the jury was sworn, the prosecutor sought the court's approval to refer in his opening to discovery of the magazine in defendant's car and to the burglary investigation. Defense counsel responded:
I think there's no dispute that the fact that a magazine and bullets are found in the defendant's car is admissible. We're not arguing about that.
[B]ut when you go beyond that to say that the car was found in the proximity of the scene of the burglary that has no bearing on the case at hand. It brings in other crimes evidence basically for no probative value.... It does have a substantial, an enormous potential to prejudice the jury against the defendant because they may suspect that he's also involved in some other crimes....
The prosecutor then withdrew his request to refer to the burglary, pending evidentiary development at trial. After the initial conference, defense counsel neither objected to the officer's testimony, the physical evidence, or the charge, nor requested a limiting instruction.
Assuming that this was "other crimes" evidence under N.J.R.E. 404(b), not part of the res gestae as argued by the State on appeal, the trial judge should have given a limiting instruction regarding intent to possess, but we do not know on retrial whether new counsel will take the same position as did prior counsel. If defense counsel objects to the testimony regarding the other magazine, the trial *936 court will have to determine whether the evidence is admissible and, if so, whether a limiting instruction is warranted in the context of the case presented.
We have considered defendant's remaining contention regarding the trial judge's refusal to charge self-defense and find it to be without merit. R. 2:11-3(e)(2). Defense counsel waived an opening statement and defendant neither testified at trial nor called any witness. Based on the driver's testimony, there was no evidence to support the claim of a relentless pursuit of defendant, that the driver was armed, or anything from which a jury could conclude that the driver forcibly tried to extract payment from defendant or committed any act against which defendant sought to protect himself.
Accordingly, except to reverse defendant's conviction for first-degree robbery and to remand the matter for a new trial on that charge, the judgment of conviction is affirmed.
NOTES
[1] At trial it was stipulated that when Grissom was later apprehended, he had $182 on his person.