816 A.2d 171 (2003)
357 N.J. Super. 532
STATE of New Jersey, Plaintiff-Respondent/Cross-Appellant,
v.
John L. HARRIS, Defendant-Appellant/Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 7, 2003.
Decided February 25, 2003.
*173 Stephen W. Kirsch, Deputy Public Defender, argued the cause for appellant/cross-respondent (Yvonne Smith Segars, Public Defender, attorney; Mr. Kirsch, on the brief).
Jack L. Weinberg, Acting Assistant Prosecutor, argued the cause for respondent/cross-appellant (Vincent P. Sarubbi, Camden County Prosecutor, attorney; Mr. Weinberg, of counsel and on the brief).
Before Judges SKILLMAN, CUFF and LEFELT.
*172 The opinion of the court was delivered by SKILLMAN, P.J.A.D.
This appeal requires us to consider the correct form of jury instruction when a defendant is charged with armed robbery based on simulated possession of a deadly weapon.
A jury found defendant guilty of thirddegree burglary, in violation of N.J.S.A. 2C:18-2; third-degree theft, in violation of N.J.S.A. 2C:20-3; armed robbery, in violation of N.J.S.A. 2C:15-1; and third-degree escape, in violation of N.J.S.A. 2C:29-5a. The jury also acquitted defendant of a charge of fourth-degree aggravated assault, and the trial court dismissed a second count of escape. The court sentenced defendant to an extended fifty-year term of imprisonment, with fifteen years of parole ineligibility, for the armed robbery, and concurrent five-year terms, with twoand-a-half years of parole ineligibility, for the burglary and the escape. The court merged defendant's theft conviction into his conviction for armed robbery.
Defendant's convictions arose out of a burglary of an apartment in the Regency Court Apartments on the White Horse Pike in the Borough of Magnolia. Around 2:30 p.m. on January 11, 2000, one of the tenants, Lamont Lundy, observed a man later identified as defendant carrying numerous items of clothing from the area of the apartment of the victim, Zachary Paige, through a courtyard in the direction of a parking lot. When he made these observations, Lundy assumed defendant was a tenant who was moving out of his apartment.
Around the same time, another tenant, Joseph Cross, who lived next door to Paige, saw a man he later identified as defendant carrying a big box covered by a blanket out of Paige's apartment. Cross asked defendant whether he knew Paige. Defendant said he did, and that he had just bought his projection TV "for five bucks." After defendant declined his offer to help him carry the TV, Cross went back into his apartment.
Around 3:15 p.m., Paige returned home from work and met his friend, Walter Domanski, Jr., who worked in the apartment complex and was the manager's son. As they approached Paige's apartment, they noticed that the hinges on the front door were torn off. When Paige entered the apartment, he discovered that his TV, numerous items of clothing, cellular telephones, gold chains, cash and other personal property were missing. Paige immediately reported the crime to the Magnolia Police Department. While Paige was calling the police, Domanski *174 went to tell his father, Walter Domanski, Sr., what had happened. Paige and the two Domanskis then began looking for the perpetrator. The three men encountered Lundy, who told them he had seen a man carrying clothing from Paige's apartment.
Shortly thereafter, the men saw defendant in the woods adjoining the apartment complex, drinking a beer and looking at them. The men approached defendant, asked him who he was and what he was doing there. Defendant responded, "I'm just drinking a beer. I'm minding my own business." Paige and Domanski, Jr. then noticed that defendant was wearing Paige's Reebok jacket, leading Paige to exclaim: "Oh my god, that is my jacket!" When defendant heard this, he threw his beer can at the men and attempted to punch Paige. Domanski, Jr. stepped in front of Paige, got hit with the punch, then grabbed defendant, placed him in a headlock, and wrestled him to the ground.
According to Paige, after Domanski, Jr. wrestled defendant to the ground, defendant said: "You don't know who I am. You don't know my background. Um, I got a gun on me. I'll shoot you. I'll kill you." At this point, defendant "reached behind his back like he was about to do something, as far as reach for a gun or a knife, whatever the case may be and [Domanski, Sr.] stopped him." However, defendant was not in fact armed, and Domanski, Jr. kept him on the ground until the police arrived and placed him under arrest.
The police and the group of men subsequently searched the area around the apartment complex for the items taken from Paige's apartment. They discovered his projection TV hidden behind a dumpster near the parking lot. However, the only other item recovered was the Reebok jacket worn by defendant.
The police brought defendant to the police station and handcuffed him to a bench. However, a short while later, they heard the back door slam shut, and when they looked at the bench, they saw that defendant had escaped from the handcuffs and left the police station. This conduct was the basis of defendant's conviction for escape, which is not challenged in this appeal. Defendant was arrested sometime later in Virginia.
On appeal, defendant argues that the trial court erred in refusing to give an instruction to the jury concerning crossracial identification, failing to instruct the jury concerning simple assault and terroristic threats as lesser included offenses of robbery, and failing to adequately explain to the jury that to convict him of "armed" robbery, it had to find that he "simulated" possession of a weapon rather than merely verbally threatening use of a weapon. In addition, defendant has submitted a pro se supplemental brief which argues that the trial court erred in admitting Paige's Reebok jacket into evidence because the State did not establish the chain of custody of this evidence and that the evidence was insufficient to support his conviction for armed robbery. The State has cross-appealed on the ground that the trial court failed to impose the sentence of life imprisonment without parole mandated by N.J.S.A. 2C:43-7.1, sometimes referred to as the "Three Strikes and You're In" law. State v. Oliver, 316 N.J.Super. 592, 594 n. 1, 720 A.2d 1001 (App.Div.1998), aff'd, 162 N.J. 580, 745 A.2d 1165 (2000).
We conclude that the arguments set forth in defendant's supplemental pro se brief are clearly without merit and do not require discussion. R. 2:11-3(e)(2). We also conclude that the trial court did not abuse its discretion in refusing to give a cross-racial identification instruction. However, the court erred in failing to instruct *175 the jury regarding simple assault and terroristic threats as lesser included offenses of robbery and its instruction regarding armed robbery did not adequately explain the law regarding simulated possession of a weapon. The court's failure to submit to the jury the lesser included offenses of robbery and the inadequacy of its instruction regarding armed robbery do not affect defendant's convictions for burglary and escape. Therefore, we affirm defendant's convictions for burglary and escape, but reverse his conviction for armed robbery. The reversal of defendant's robbery conviction makes it unnecessary to consider whether he was properly sentenced under N.J.S.A. 2C:43-7.1.

I
In State v. Cromedy, 158 N.J. 112, 132, 727 A.2d 457 (1999), the Court held that a jury instruction regarding the difficulty of cross-racial identification must be given in any case where "identification is a critical issue ..., and an eyewitness's cross-racial identification is not corroborated by other evidence giving it independent reliability."
Defendant asked the court to give the jury a cross-racial identification instruction because he is black and the only witness who claimed to have seen him leaving the victim's apartment was Cross, who is white. However, the trial court denied the application because both Lundy, who also observed defendant in the area of the victim's apartment, and the victim are black, and the State presented substantial evidence corroborating Cross's identification.
We affirm the trial court's denial of defendant's application for a cross-racial identification instruction substantially for the reasons stated by the court. Defendant was observed in the area of the victim's apartment carrying items of personal property under suspicious circumstances not only by Cross but also by Lundy, who is black, and their identifications of defendant as the perpetrator were corroborated by substantial other evidence including defendant's wearing of the victim's Reebok jacket shortly after the crime. Thus, the State presented overwhelming evidence that defendant was the perpetrator, and the only real issue at trial was whether defendant's actions while he was being apprehended converted what otherwise would have been a burglary and theft into an armed robbery. Consequently, this was not a case where identification was "a critical issue" or where Cross's identification of defendant "[was] not corroborated by other evidence giving it independent reliability." Ibid.

II
Pursuant to N.J.S.A. 2C:1-8e, a trial court "shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." When a defendant requests submission to the jury of a lesser included offense, the court is obligated to examine the record and determine whether a rational basis exists for the jury to acquit the defendant of the charged offense and convict him of the lesser offense. State v. Brent, 137 N.J. 107, 113-14, 644 A.2d 583 (1994). However, when the defendant does not request a lesser included offense instruction, the court only needs to determine whether the evidence "clearly indicates" the appropriateness of submitting that offense to the jury. State v. Choice, 98 N.J. 295, 298, 486 A.2d 833 (1985).
Robbery is proscribed by N.J.S.A. 2C:15-1a, which provides:
A person is guilty of robbery, if, in the course of committing a theft, he:
(1) Inflicts bodily injury or uses force upon another; or *176 (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
(3) Commits or threatens immediately to commit any crime of the first or second degree.
An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.

[Emphasis added.]
In State v. Jordan, 240 N.J.Super. 115, 572 A.2d 676 (App.Div.), certif. denied, 122 N.J. 328, 585 A.2d 345 (1990), we held that where there is a question whether the defendant's act of "inflict[ing] bodily injury," "us[ing] force upon another" or "threat[ening] another with [or] purposely put[ting] him in fear of bodily injury" occurred "in the course of committing a theft," the trial court must submit theft to the jury as a lesser included offense of robbery. In that case, store detectives confronted a shoplifter shortly after he left the store and asked him whether he had a receipt for the merchandise he was carrying. The shoplifter responded by throwing a punch at one of the detectives and swinging a bag containing radios at his head. The detectives grabbed defendant and eventually subdued him. After defendant was brought back to the store, he "body slammed" one store detective and threw another one into a display case in an effort to escape. We reversed defendant's conviction for robbery because the trial court failed to submit theft or shoplifting to the jury as lesser included offenses:
The jury might have rejected the State's proofs that defendant used force against [Detective A] when he was stopped after leaving the store and it might have found that defendant's infliction of bodily injury on [Detective B] and [Detective C] after he was returned to the store occurred after flight had been concluded and defendant was in custody. Thus, the jury might have found that the bodily injury to the two store detectives was not inflicted in the course of committing a theft....

[Id. at 120-21, 572 A.2d 676 (citations omitted).]
Similarly, in State v. Grissom, 347 N.J.Super. 469, 479, 790 A.2d 928 (App. Div.2002), we reversed a robbery conviction because the trial court refused to submit theft of services to the jury as a lesser included offense. The defendant in Grissom walked away from a taxicab without paying. When the driver followed him and demanded his fare, the defendant pulled out a handgun and asked, "are you looking for money?" Id. at 473, 790 A.2d 928. In concluding that the jury could have acquitted defendant of robbery and found him guilty of the lesser included offense of theft of services, we observed that "there... is sufficient evidence in the record from which a jury could have concluded that defendant reached a point of at least temporary safety ... when he exited the cab and that his pointing the gun was a separate offense." Id. at 479, 790 A.2d 928.
There was ample evidence in this case from which the jury could have found that defendant was not still "in immediate flight" after commission of the thefts in Paige's apartment when Paige and the Domanskis approached and eventually apprehended him in the woods. The evidence indicated that as much as forty-five minutes elapsed between the thefts and this violent confrontation with defendant. Furthermore, the fact that none of the items stolen from Paige's apartment, except for the TV and Reebok jacket, were ever recovered could support an inference that defendant transported those items to some location remote from the apartment, where *177 he would have "reached a point of at least temporary safety," State v. Mirault, 92 N.J. 492, 500-01, 457 A.2d 455 (1983), but chose for some reason to return to the scene of the crime.
Under this view of the evidence, the jury could have found that the burglary and thefts from Paige's apartment and the confrontation with defendant that led to his apprehension were discrete events, and that defendant was no longer in the course of committing the theft when he punched Domanski, Jr. and threatened him and Paige. In that event, defendant could have been found guilty of burglary and theft for his unlawful conduct in entering and stealing property from Paige's apartment and simple assault and terroristic threats for his unlawful conduct when Domanski, Jr. apprehended him.
However, the trial court failed to present the jury with this option because the only offense it submitted to the jury relating to the violent confrontation in the woods was the armed robbery charge. Thus, the jury was placed in a position where it either had to find defendant guilty of armed robbery or acquit him entirely of any offense relating to the Domanskis' and Paige's confrontation with him, which is precisely the kind of "all-ornothing" choice that the requirement of submission of lesser included offenses to the jury is designed to avoid. See State v. Short, 131 N.J. 47, 54, 618 A.2d 316 (1993). Moreover, even though the court instructed the jury regarding theft, this charge was not submitted to the jury as a lesser included offense of robbery. Therefore, the submission to the jury of theft, simple assault and terroristic threats as lesser included offenses of armed robbery was "clearly indicated" and the court's failure to charge these lesser included offenses requires a reversal of defendant's conviction and a new trial.

III
Although the court's failure to submit lesser included offenses to the jury requires a reversal of defendant's armed robbery conviction, it is appropriate for the guidance of the court at the retrial to discuss the court's instruction regarding the charge of armed robbery with a simulated weapon.
Robbery is elevated from a second to a first-degree offense if the defendant "is armed with, or uses or threatens the immediate use of a deadly weapon." N.J.S.A. 2C:15-1b.[1] A "deadly weapon" is defined as:
any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury;

[N.J.S.A. 2C:11-1c (emphasis added).]
In State v. Hutson, 107 N.J. 222, 227, 526 A.2d 687 (1987), the Court concluded that, under the underscored part of this definition, if a defendant does not actually possess a firearm or other object "known to be capable of producing death or bodily injury" in the course of a robbery, the State must prove that there was "some *178 tangible object possessed by the defendant that the victim believe[d] to be a deadly weapon.... A threat or reference to a gun alone is not enough." Moreover, the victim's subjective belief that the tangible object was a deadly weapon must have been "a reasonable one under the circumstances." Ibid.
Applying this interpretation of the definition of deadly weapon, the Court in Hutson concluded that the defendant, who threatened the use of a gun when he demanded money from the victim and was carrying a newspaper when he made the threat, could not be found guilty of armed robbery because the State did not present any evidence that the newspaper was fashioned or held in such manner as to create a reasonable impression it was a weapon or concealed a weapon. Id. at 228-29, 526 A.2d 687. The Court observed, however, that "a newspaper could be so fashioned as to imply either that it conceals such a weapon or is itself such a weapon, and thereby satisfy the definition" of a "deadly weapon." Id. at 230, 526 A.2d 687.
Based on Hutson, the Court concluded in State v. LaFrance, 224 N.J.Super. 364, 371-73, 540 A.2d 879 (App.Div.1988), rev'd on other grounds, aff'd o.b. as to this point, 117 N.J. 583, 595, 569 A.2d 1308 (1990), that a robber who pretended to possess a gun by placing his hand inside his jacket and creating a bulge could be found guilty of armed robbery. Similarly, the Court concluded in State v. Huff, 292 N.J.Super. 185, 189-92, 678 A.2d 731 (App. Div.), aff'd o.b., 148 N.J. 78, 689 A.2d 723 (1997), that a robber who told the victim, "I have a gun here," and patted the waist area of a loose fitting coat, could be found guilty of armed robbery. In reaching this conclusion, our opinion stated that "it was reasonable for the cashier to accept defendant's simulation of possession of a gun by patting his waist, covered by a loose fitting stadium coat, proclaiming `I have a gun here[.]'" Id. at 190, 678 A.2d 731.
The issue in Hutson; LaFrance and Huff was the sufficiency of the evidence to support convictions for armed robbery rather than the adequacy of the jury instruction regarding an armed robbery based on simulated possession of a weapon. Because the Court in Hutson found the evidence insufficient to find defendant guilty of armed robbery, it had no occasion to consider the jury instruction. The statement of the issues presented in LaFrance does not indicate that defendant presented any argument regarding the jury instruction for armed robbery. 224 N.J.Super. at 367, 540 A.2d 879. Nevertheless, after concluding that the evidence was sufficient to support the conviction, we stated:
Surely, the instruction that "it is the intent of the law to provide the same sanction for robbery committed by simulating the use of a weapon as for one who perpetrates a robbery with an actual firearm" adequately conveyed to the jury that a conviction of first-degree robbery required their finding that the [victims] had a reasonable belief that defendant possessed a gun. Moreover, defendant has failed to demonstrate that the charge in this respect was clearly capable of producing an unjust result. R. 2:10-2.
[Id. at 372-73, 540 A.2d 879.]
As in LaFrance, the statement of issues in Huff does not include any issue as to the adequacy of the jury instruction regarding armed robbery, 292 N.J.Super. at 187-88, 678 A.2d 731, and our opinion simply noted that "[t]he jury was carefully charged on the issue, both in the formal charge, and in response to several jury questions." Id. at 190, 678 A.2d 731. In addition, we indicated that the trial court responded to one of the jury's questions by stating:

*179 [T]he Defendant must use a firearm or other weapon, device, instrument, material or substance, and the manner in which that item is fashioned must lead the victim reasonabl[y] to believe it capable of producing death or serious bodily injury.
The victim need not see the device or instrument so long as there is some device used by the defendant that is fashioned to create in the victim the reasonable sensory impression that the object is capable of causing serious harm or death.
[Id. at 191, 678 A.2d 731.]
Thus, neither the Supreme Court nor this court have been required to consider what instruction the jury must be given when an armed robbery charge is predicated upon simulated possession of a deadly weapon. Moreover, there is no model jury charge that deals with this type of armed robbery.
In this case, the trial court provided the jury with the following instruction regarding the armed robbery charge:
Now members of the jury, a portion of our statute provides that a robbery is a crime of the second degree except that it is a crime of the first degree if the robber is either armed with or uses or threatens the immediate use of a deadly weapon. In this case the State's allegation is that the beer-can is a deadly weapon[2] and that there was a threat of the use of a gun and, therefore, the State's alleging the defendant threatened the immediate use of a deadly weapon.
In order for you to determine and answer the question you must understand the meaning of deadly weapon. A deadly weapon is any firearm, or any other weapon, device, instrument, material or substance which in the manner it is used or intended to be used, is known to be capable of producing death or serious bodily injury, or in which the manner it is fashioned would lead the victims reasonably to believe that it was capable of producing death or serious bodily injury.
The State does not have to prove that the defendant actually had a real gun. As I indicated to you, the definition of a deadly weapon provides that a deadly weapon includes the use of any object which, in the manner it is fashioned, would lead the victim reasonably to believe that it was capable of producing death or serious bodily injury. Therefore, if that State has proven, beyond a reasonable doubt, that the defendant, through his words and gestures, intentionally lead Walter Harris or Zachary Paige to reasonably believe that they [sic] had a real gun, then the State has satisfied the deadly weapon element of the crime to elevate it to the first degree.
This instruction did not adequately explain to the jury what the State must prove when an armed robbery charge is predicated upon alleged simulated possession of a deadly weapon. The trial court did not tell the jury, in accordance with Hutson, that "[a] threat or reference to a gun alone is not enough[,]" *180 and that "there must be some tangible object possessed by the defendant that the victim believes to be a deadly weapon[,]"[3] for a defendant to be found guilty of armed robbery. 107 N.J. at 227, 526 A.2d 687. The court's instruction that the State had to prove "that the defendant, through his words and gestures, intentionally led [the victim] to reasonably believe that [he] had a real gun" was too vague, because it failed to convey to the jury that the only kind of "gesture" that can satisfy the requirements of N.J.S.A. 2C:11-1c is one which simulates possession of a deadly weapon, such as creating a bulge by placing a hand in a pocket, as in LaFrance, or patting the waist area of a bulky coat, as in Huff.[4]
The record left some uncertainty concerning the manner in which defendant allegedly simulated possession of a weapon. According to Paige, defendant "reached behind his back like he was about to do something, as far as reach for a gun or a knife, whatever the case may be and [Domanski, Sr.] stopped him." However, according to Domanski, Jr., when defendant said he had a gun and was going to shoot him, defendant "[p]ut his hand in his pocket and then he took it out." Lundy, the only other witness who testified about Domanski's apprehension of defendant, did not mention that defendant threatened use of or made any motion to retrieve a weapon. In view of this conflicting evidence, the jury very well could have found that the State failed to prove beyond a reasonable doubt that defendant possessed "some tangible object" that was "fashioned in such a manner that the victim[s] reasonably believe[d] it to be capable of causing bodily injury or death." Hutson, supra, 107 N.J. at 227-28, 526 A.2d 687. Therefore, even if the trial court had not committed reversible error by failing to submit theft, terroristic threats and simple assault as lesser included offenses of robbery, its failure to adequately explain the concept of simulated possession of a deadly weapon would have required a reversal of defendant's armed robbery conviction. See State v. Burgess, 154 N.J. 181, 186, 712 A.2d 631 (1998).
Accordingly, we affirm defendant's convictions for burglary and escape. We reverse defendant's conviction for armed robbery and remand to the trial court for a retrial of that charge in conformity with this opinion.
NOTES
[1] Robbery is also elevated to a first-degree offense if the defendant "attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury" in the course of the offense. Ibid. The indictment did not allege and the State did not present any evidence that defendant's offense constituted a firstdegree robbery under this part of N.J.S.A. 2C:15-1b.
[2] The trial court submitted the State's contention that the beer can defendant threw at Paige and the Domanskis constituted a deadly weapon by a separate question on the jury verdict sheet, which asked:

In the course of committing the theft, did the defendant, use or threaten the immediate use of a deadly weapon? (Beer Can)
The jury's response to this question was "no." Therefore, it is clear the jury found defendant guilty of armed robbery based on his simulated possession of a gun rather than his actual possession of a beer can.
[3] The trial court in Huff conveyed this concept by telling the jury that there must be "some device used by the defendant that is fashioned to create in the victim the reasonable sensory impression that the object is capable of causing serious harm or death." 292 N.J.Super. at 191, 678 A.2d 731.
[4] Because it is fairly common for an armed robbery to be committed with a simulated weapon and, as this case illustrates, the definition of "deadly weapon" as applied to a simulated weapon is not easily explained to a jury, the Supreme Court Committee on Model Jury Charges, Criminal, should consider formulation of a model charge dealing with this subject.