845 A.2d 1257 (2004)
368 N.J. Super. 298
STATE of New Jersey, Plaintiff-Respondent,
v.
Gloria WALTON, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 16, 2004.
Decided April 2, 2004.
*1258 Yvonne Smith Segars, for defendant-appellant (Kevin G. Byrnes, Princeton, Designated Counsel, of counsel and on the brief).
John J. Molinelli, for plaintiff-respondent (Catherine A. Foddai, Assistant Prosecutor, of counsel and on the brief).
Before Judges PRESSLER, CIANCIA and ALLEY.
The opinion of the court was delivered by ALLEY, J.A.D.
On October 7, 2000, at about 8:15 p.m., a man and a woman entered the Dress Barn store in Hackensack and proceeded to commit a robbery. The couple approached the cash register apparently posing as legitimate customers and the female culprit seemed to be making a purchase that required change. When the cashier opened the register to remove the change, however, the male culprit drew what appeared to be a gun and held it on the cashier, herded her and other store employees into the back, and there forced them to enter a bathroom and shut the door. As the store employees were being taken into the back one of them saw the woman go to the register and remove a bag from underneath it. When the employees freed themselves from the bathroom after about ten minutes the couple was gone.
Defendant was indicted on charges of first-degree armed robbery, N.J.S.A. 2C:15-1 (Count One); second-degree possession of a handgun with a purpose to use it unlawfully against another, N.J.S.A. 2C:39-4a (Count Two); and third-degree possession of a handgun without a permit, N.J.S.A. 2C:29-5b (Count Three).
In a jury trial that began April 23, 2002, defendant was found guilty on all charges. She was sentenced to eighteen years imprisonment on the armed robbery conviction, with eighty-five percent of the term to be served without parole pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2 (NERA). Count Two was merged into *1259 Count One, and on Count Three the sentencing judge imposed a concurrent fouryear flat term.
On appeal, defendant raises the following contentions:

POINT I: THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ART. I PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON THE LAW OF CROSS-RACIAL IDENTIFICATIONS EVEN THOUGH THERE WAS A CROSS-RACIAL IDENTIFICATION AND IDENTIFICATION WAS THE FUNDAMENTAL CONTESTED ISSUE IN THE CASE.

POINT II: THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND RIGHT OF CONFRONTATION AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ART. 1 PAR. 1 AND PAR. 10 OF THE NEW JERSEY CONSTITUTION WERE VIOLATED BY THE INTRODUCTION OF EVIDENCE FROM UNKNOWN, ABSENTEE SOURCES IMPLICATING THE DEFENDANT. (Not Raised Below)

POINT III: THE TRIAL COURT DEPRIVED THE DEFENDANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. 1 PAR. 1 OF THE NEW JERSEY CONSTITUTION BY FAILING TO INSTRUCT THE JURY ON LESSERINCLUDED OFFENSES.
A. The Trial Court Failed To Instruct The Jury On The Crime Of Unarmed Robbery, A Second Degree Offense. (Partially Raised Below)
B. The Trial Court Failed To Instruct The Jury On The Crime Of Theft, A Third Degree Offense. (Partially Raised Below)

POINT IV: THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ART. I PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED WHEN THE TRIAL COURT ERRED IN ITS INSTRUCTIONS TO THE JURY ON THE LAW OF ACCOMPLICE LIABILITY. (Not Raised Below)

POINT V: THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ART. I PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY THE TRIAL COURT'S FAILURE TO EXPLAIN THE LAW IN THE CONTEXT OF THE FACTS OF THE CASE AFTER THE JURY ASKED FOR CLARIFICATION OF THE LAW. (Not Raised Below)

POINT VI: THE TRIAL COURT VIOLATED THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. 1 PAR. 1 OF THE NEW JERSEY CONSTITUTION BY FAILING TO INSTRUCT THE JURY ON THE LAW OF PRIOR INCONSISTENT STATEMENTS. (Not Raised Below)

POINT VII: THE DEFENDANT'S RIGHT TO REMAIN SILENT AS GUARANTEED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE *1260 NEW JERSEY COMMON LAW WAS VIOLATED BY THE PROSECUTOR'S INTENTIONAL USE OF THE DEFENDANT'S SILENCE AT TRIAL TO SHOW THAT SHE COMMITTED THE CRIMES. (Not Raised Below)

POINT VIII: THE TRIAL COURT VIOLATED THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. 1 PAR. 1 OF THE NEW JERSEY CONSTITUTION BY ADMITTING SUGGESTIVE AND UNRELIABLE IDENTIFICATION EVIDENCE.

POINT IX: THE IMPOSITION OF NERA VIOLATED THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. 1 PAR. 1 OF THE NEW JERSEY CONSTITUTION.
A. The State Proceeded On A Theory Of Accomplice Liability But The Trial Court Never Instructed The Jurors That The Principal Could Have Committed A Violent Crime And That The Defendant Could Have Participated In That Crime But Had A Lesser Criminal Intent And Not Be Guilty Of A NERA Violent Crime. (Not Raised Below)
B. The Jury Instruction On NERA Was Deficient Because It Failed To Include The Gap-Filler Provision: The Defendant Must Know That The Gun Was Capable Of Inflicting Death Or Serious Bodily Injury. (Not Raised Below)
C. The State Failed To Produce A Scintilla Of Evidence Showing That The Purported Gun Was Actually A Deadly Weapon As Defined By NERA. (Not Raised Below)

POINT X: THE DEFENDANT'S SENTENCE IS EXCESSIVE: THE TRIAL COURT ERRED BY IMPROPERLY BALANCING THE AGGRAVATING AND MITIGATING FACTORS.
We first address defendant's contention that the trial court erred when it failed, despite her counsel's request, to give the jury a cross-racial identification instruction because the store employee who identified her from a photo array, and again in court, is Hispanic while she is African-American.
The leading New Jersey case on cross-racial identification is State v. Cromedy, 158 N.J. 112, 115, 727 A.2d 457, 458 (1999), where the Court decided that in certain circumstances "there exists a reliable basis for a cross-racial identification charge." Those circumstances are when "identification is a critical issue in the case, and an eyewitness's cross-racial identification is not corroborated by other evidence giving it independent reliability." Id. at 132, 727 A.2d at 467.
This case largely hinges on the identification of defendant, because there is no other evidence, such as fingerprints, to link her to the robbery. As in Cromedy, the State here argued to the jury that the identification was credible based on the out-of-court identification by one witness, Holiday Fernandez Ortiz, and the in-court-identification by that victim, and one other. See id. at 130, 727 A.2d at 466 (noting defense counsel's argument that the case was one of mistaken identification). As in Cromedy, defense counsel here requested a cross-racial identification jury instruction to educate the jury in the factors affecting the reliability of eyewitness identification. The record reflects the following colloquy:
DEFENSE: I suggest that the Court do the cross racial identification.

*1261 COURT: That's if the identifying witness is not of the same race as the perpetrator. The person who identified her is of the same race.
DEFENSE: We have one witness who is not.
COURT: That's not what this is here. The eyewitness that identified her in court, Miss Moore, identified her. She is the same race. So I wouldn't charge as to Miss Moore.
DEFENSE: But at least to Miss Fernandez Ortiz, that would be appropriate.
COURT: I don't know. Actually Ms. Ortiz was darker than the defendant, her skin complexion. She sat right next to me. Her complexion is darker than the defendant.
DEFENSE: I understand this is race but the real issue is culture in a sense. And even though you can compare skin colors there are various differences based on culture.
COURT: Number eight says the fact that an identifying witness is not of the same race. It doesn't say culture.
....
COURT: ... she's not the same race but she's darker than the defendant so how could that be a problem here? I don't see it.
Interestingly, the position taken by the State as to the requested Cromedy charge was as follows:
PROSECUTION: [T]here's a question whether we should err on the side of caution. I am a little concerned. I agree with the Court. Frankly I'm not really satisfied with the way this instruction has been applied generally.... Nonetheless as I see it, Miss Fernandez I don't believe is an African American. Therefore, it would be an identification made by someone of another race.
In addition had we had other independent evidence on our case I would completely agree with the Court there's really no need to err on the side of caution. The instruction shouldn't be given. But here, being that obviously identity is a critical issue, Miss Moore, of course, who is of the same race, identified her, I don't know if the Supreme Court is going to say that is enough to corroborate by way of independent evidence. I don't know. I'm not a hundred percent on that, Judge. As much as I don't like the charge I'm still inclined to think err on the side of caution.
Nevertheless, the court concluded:
COURT: Don't waste your breath. It's too late now. I'm not going to do it.
In Cromedy, the Supreme Court characterized an identification as cross-racial when "an eyewitness is asked to identify a person of another race." Id. at 120, 727 A.2d at 461. It went on to acknowledge that psychological factors exist that affect "eyewitness cross-racial or cross-ethnic identification." Ibid. Since Cromedy, we have had the opportunity to further explore the difference between culture/ethnicity and race. See e.g., State v. Valentine, 345 N.J.Super. 490, 785 A.2d 940 (App.Div.2001), certif. denied, 171 N.J. 338, 793 A.2d 716 (2002). In Valentine, the defendant was African-American and the witness was Hispanic. Id. at 496, 785 A.2d at 944. We noted, speaking through Judge Rodriguez, that Hispanics are a distinct culture but not a distinct race, that is, Hispanics could be of different races. Id. at 497, 785 A.2d at 944. Although in Valentine we found that the Cromedy instruction was not required, considering all the circumstances, we did not decide that such instruction is never warranted as between Hispanics and African-Americans. Rather, deferring to the trial court's finding that the witness was of "Spanish and African background," we concluded that the witness and defendant were of the same race. We also observed that a cross-racial *1262 identification instruction was not required given the existence of other corroborating evidence. Id. at 496, 785 A.2d at 944-45.
The circumstances here are plainly different. We conclude under Cromedy that if the cross-racial identification instruction should otherwise be given, it cannot be withheld when the witness and the defendant are of different races merely because of the relative skin tone of the witness and defendant. Here, the witness and defendant are of different races as well as different ethnicities. The trial court's decision not to give the requested Cromedy instruction because the victim's skin was darker than the defendant's was prejudicial error. Because this error goes to the heart of the integrity of the purported identification, given that the robber's identity is a central issue, we are obliged to reverse the conviction because of it. With respect to the pivotal importance of correct jury instructions in the context of identification issues, see State v. Robinson, 165 N.J. 32, 40-45, 754 A.2d 1153, 1158-61 (2000).
In view of our disposition of this appeal on the basis of the foregoing, it is not necessary to decide or to comment at length with regard to the other points that defendant has raised. We do, however, note the following in connection with the retrial of this case.
With respect to defendant's assertion that the trial court erred in failing to properly instruct the jurors regarding accomplice liability, we begin by emphasizing that it is critical that a trial court properly charge the jury in a criminal matter and that "improper instructions on material issues are presumed to constitute reversible error." State v. Jenkins, 178 N.J. 347, 361, 840 A.2d 242, 250 (2004). When a defendant might be convicted as an accomplice, the trial court must give clear, understandable jury instructions regarding accomplice liability. State v. Savage, 172 N.J. 374, 388, 799 A.2d 477, 485 (2002). Specifically, "a jury must be instructed that to find a defendant guilty ... it must find that he `shared in the intent which is the crime's basic element, and at least indirectly participated in the commission of the criminal act.'" Ibid. (quoting State v. Fair, 45 N.J. 77, 95, 211 A.2d 359, 369 (2002)).
The accomplice liability jury charge is inextricably linked to the jury charge for lesser-included offenses if such offenses are submitted to the jury. See e.g., Savage, supra, 172 N.J. at 388, 799 A.2d at 485. The trial court must then "`carefully impart to the jury the distinctions between the specific intent required for the grades of the offense.'" State v. Bielkiewicz, 267 N.J.Super. 520, 528, 632 A.2d 277, 281 (App.Div.1993) (quoting State v. Weeks, 107 N.J. 396, 410, 526 A.2d 1077, 1084 (1987)). The trial court must also "make specific reference to those offenses in the context of its charge on accomplice liability." State v. Harrington, 310 N.J.Super. 272, 278, 708 A.2d 731, 734 (App.Div.), certif. denied, 156 N.J. 387, 718 A.2d 1216 (1998). In Harrington, we found that the trial court's failure to refer to accomplice liability while giving the lesser-included charge was reversible error because the jury was not apprised of the principle that the defendant could be guilty of seconddegree robbery while the principal was guilty of first-degree armed robbery. Id. at 279, 708 A.2d at 734-35.
The trial court must evaluate the possible lesser-included charges based on whether the charge was requested or unrequested. Savage, supra, 172 N.J. at 396-97, 799 A.2d at 491-92. When counsel specifically requests a lesser-included charge the trial court must evaluate the evidence under a rational basis standard, i.e., "whether the evidence presents a rational basis on which the jury could acquit *1263 the defendant of the greater charge and convict the defendant of the lesser." Id. at 397, 799 A.2d at 493 (quoting State v. Brent, 137 N.J. 107, 117, 644 A.2d 583, 587 (1994)). When counsel does not request a lesser-included charge, the charge "must be given only where the facts in evidence `clearly indicate' the appropriateness of that charge." Ibid. (quoting State v. Choice, 98 N.J. 295, 298, 486 A.2d 833, 835 (1985)). See State v. Jenkins, 178 N.J. 347, 361, 840 A.2d 242, 250-51 (2004).
Defendant was charged with first-degree robbery under N.J.S.A. 2C:15-1. Robbery is a crime of second-degree unless "`if in the course of committing the theft the actor attempts to kill anyone or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon,' in which case it becomes a first-degree offense." State v. J.M., 364 N.J.Super. 486, 493, 837 A.2d 392, 396 (App.Div.2003) (quoting N.J.S.A. 2C:15-1b). During the charge conference, counsel discussed the robbery charge, making the distinction between first and second-degree robbery in the context of lesser-included offenses and accomplice liability. During the jury instructions the trial court gave the model jury charge on robbery. The trial court also charged the jury specifically on the lesser-included offense of second-degree robbery:
If you find that the State has proven beyond a reasonable doubt that the defendant committed the crime of robbery as I have defined that crime to you but you have a reasonable doubt as to whether the defendant was armed with or used or threatened the immediate use of a deadly weapon at the time of the commission of the robbery, then you will find the defendant guilty of robbery in the second degree.
If you find beyond a reasonable doubt that defendant committed the crime of robbery and was armed with a deadly weapon or used or threatened the immediate use of a deadly weapon at the time of the commission of the robbery, then you will find the defendant guilty of robbery in the first degree.
After the jury was charged, defense counsel raised the question as to whether the lesser-included offense of theft should be charged.
The trial judge followed the model jury charge for second-degree robbery, but he failed to mold the charge to the facts of the case. While he also gave a charge on accomplice liability it too was purely a model charge, not a charge crafted to fit the facts. As Savage stated,
To be sure, the trial court failed to articulate factually how [defendant number one] could have been guilty of purposeful or knowing murder, and [defendant number two] guilty of one of the lesser offenses, for example aggravated or simple assault, if he possessed a different state of mind. Indeed the court's "canned" accomplice liability instruction was not tied to the facts at all and, in that respect, violated our often-expressed exhortation that, to serve its purpose, a charge, especially a complex one, should be tethered to the facts that the jury has heard.
[Savage, supra, 172 N.J. at 393-94, 799 A.2d at 489].
Although the trial court gave a proper model jury charge of the lesser-included offense of second-degree robbery, as the Court in Savage made clear was required, reversible error was committed because the charge was not tied to the facts of the case and because the accomplice liability charge was given completely separately from the lesser-included offense charge.
Theft is a lesser-included offense of robbery, and it is appropriate to charge theft if "there is a question whether the *1264 defendant's act of `inflict[ing] bodily injury,' `us[ing] force upon another' or `threat[ening] another with [or] purposefully put[ting] him in fear of bodily injury' occurred `in the course of committing a theft....'" State v. Harris, 357 N.J.Super. 532, 539, 816 A.2d 171, 176 (App.Div. 2003).
Under the facts presented here, the robber did "unlawfully take[ ], or exercise[d] unlawful control over, movable property of another with purpose to deprive him thereof" and a theft was thus committed. N.J.S.A. 2C:20-3. We are satisfied that a rational jury could find that the theft occurred separately from the elements that would raise the crime to a robbery and that this is clearly indicated by the evidence. See e.g., State v. Grissom, 347 N.J.Super. 469, 476, 790 A.2d 928, 933 (App.Div.2002). Here the woman stood near the man while he pulled a gun on the victim, and then after he led the victim to the back, she approached the cash register and took a bag from underneath the register. Since the removal of the money occurred after the threatening behavior took place, it is conceivable that the jury could find the theft and the threatening behavior not to be part of a continuous transaction. See e.g., id. at 479, 790 A.2d at 935. True, defense counsel did not here request a lesser-included offense instruction regarding theft but merely raised a question concerning such a charge after the jury began their deliberations, as a result of which the trial court only needed to determine "whether the evidence `clearly indicates' the appropriateness of submitting that offense to the jury." Harris, supra, 357 N.J.Super. at 539, 816 A.2d at 175 (quoting Choice, supra, 98 N.J. at 298, 486 A.2d at 835). The trial court did not commit reversible error by not charging theft as a lesser-included offense in these circumstances. If, however, on a retrial an appropriate request therefor is made the instruction should be given. Reversible error resulted from improper instruction to the jury on lesser-included offenses with respect to accomplice liability. We trust that on retrial an appropriate accomplice liability charge will be given.
Finally, we note defendant's assertions regarding what she claims were inadequacies in the jury instructions as to responsibility under NERA, which, as in effect at the time of this crime and before the statute was amended in 2001, required a court to impose an eighty-five percent parole ineligibility of the sentence for a crime of first or second-degree during which the defendant is not eligible for parole "if the crime is a violent crime as defined in subsection d. of this section." N.J.S.A. 2C:43-7.2 (1997). Under subsection d. of NERA, "`violent crime' means any crime in which the actor causes death, causes serious bodily injury ... or uses or threatens the immediate use of a deadly weapon." N.J.S.A. 2C:43-7.2d (1997). In addition, a "`deadly weapon' means any firearm or other weapon ... which in the manner it is used or intended to be used, is known to be capable of producing death or serious bodily injury." Ibid.
As was recognized in State v. Rumblin, 166 N.J. 550, 556, 766 A.2d 1141, 1145 (2001), an accomplice to a first-degree armed robbery is subject to NERA sentencing, just as is the principal, provided they "share the same mental culpability." If the intent that a gun be used was not shared and defendant was convicted only of the lesser-included offense of seconddegree robbery, the trial court could not of course properly sentence a defendant under NERA. If the jury found that she shared the same intent or purpose as her principal for purposes of grading the robbery charge and that defendant was therefore guilty of first-degree robbery, we point out that the trial court could sentence defendant under NERA only if the *1265 jury also determined for NERA purposes that she shared with the principal the same mental state with regard to the use or threatened "immediate use of a deadly weapon." See e.g., State v. Johnson, 166 N.J. 523, 545-46, 766 A.2d 1126, 1139 (2001).
We are confident that on remand the trial court will carefully consider and appropriately instruct the jury with regard to cross-racial identification, accomplice liability, and lesser-included offenses and also will give appropriate consideration to any NERA issues that might be implicated.
Reversed and remanded.