**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0413-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

QUAMEER L. HENCE,

     Defendant-Appellant.

_____

> Submitted November 7, 2018 – Decided December 18, 2018
>
> Before Judges Suter and Firko.
>
> On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 15-02-0451.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Elizabeth C. Jarit, Assistant Deputy Public Defender, of counsel and on the briefs).
>
> Mary Eva Colalillo, Camden County Prosecutor, attorney for respondent (Maura Murphy Sullivan, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a jury trial, defendant Quameer L. Hence was found guilty of: first-degree robbery, N.J.S.A. 2C:15-1; third-degree criminal restraint, as a lesser-included offense of kidnapping, N.J.S.A. 2C:13-1; and second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1). On August 5, 2016, the trial judge granted the State's motion for an extended term of imprisonment resulting in defendant being sentenced on the robbery charge to forty-five years in prison, subject to the No Early Release Act (NERA), and five years on the criminal restraint charge, consecutive to the robbery sentence, plus mandatory fines and penalties. The court merged the second-degree aggravated assault charge with the first-degree robbery charge.

On appeal, defendant presents the following arguments:

POINT I

THE JURY INSTRUCTIONS WERE FATALLY FLAWED, DEPRIVING DEFENDANT OF DUE PROCESS AND A FAIR TRIAL, AS WELL AS THE RIGHT TO PRESENT A DEFENSE AND THE RIGHT TO A UNANIMOUS JURY VERDICT. (Partially raised below)

A. Failure to instruct the jury on accomplice liability denied Mr. Hence due process, a fair trial, and the right to present a complete defense where Mr. Hence's defense was that he had a lesser mens rea than that of his codefendant who acted as the principal. (Not raised below)

2

B. The jury instructions and verdict sheet on first-degree robbery allowed for a non-unanimous verdict, depriving Mr. Hence of his right to a unanimous verdict and due process of law. (Not raised below)

C. Failure to charge the requested lesser-included offense of theft denied Mr. Hence due process and a fair trial.

POINT II

THE RULES OF EVIDENCE AND THE DEFENDANT'S DUE PROCESS RIGHTS WERE VIOLATED BY THE ADMISSION OF HEARSAY STATEMENTS THAT PEOPLE FROM THE NEIGHBORHOOD WERE SAYING THE DEFENDANT WAS GUILTY OF THE CRIME. (Not raised below)

POINT III

THE CUMULATIVE IMPACT OF THE ERRORS DENIED HENCE DUE PROCESS AND A FAIR TRIAL. (Not raised below)

POINT IV

RESENTENCING IS REQUIRED BECAUSE THE COURT PENALIZED THE DEFENDANT FOR EXERCISING HIS RIGHTS TO REMAIN SILENT AND PROCEED TO TRIAL, IMPROPERLY DOUBLE-COUNTED THE HARM TO THE VICTIM, INCORRECTLY IMPOSED CONSECUTIVE SENTENCES, AND IMPOSED A MANIFESTLY EXCESSIVE SENTENCE.

A-0413-16T4

A.  The trial court's consideration of Mr. Hence's lack of remorse "up until today" penalized the defendant for maintaining his innocence and exercising his constitutional right to a trial.

B.  Because the brutality of the assault was double-counted throughout the imposition of sentence, resentencing is required.

C.  Because all of the Yarbough factors weigh in favor of concurrent sentences, the court erred in imposing consecutive sentences for the robbery and criminal restraint convictions.

D.  The fifty-year sentence is manifestly excessive.

We reject these arguments and affirm defendant's conviction and sentence.[1]

I.

The following facts are derived from the trial record. On September 15, 2014, fifty-four year old S.L.,[2] who was homeless and using crack cocaine and alcohol at the time, was walking and approached by defendant, who questioned her about what she was doing. He followed her, punched her in the face in an alley in Camden, removed her clothes, and sexually assaulted her. While held

---

[1] We granted defendant's motion to compel turnover of co-defendant Miguel Nunez's Presentence Report on January 9, 2018.

[2] We use initials to protect the privacy of the victim.

down, S.L. saw a Hispanic male on a phone standing nearby and thought he was calling the police. Instead, he refused to assist her, and stood by watching the assault. Defendant struck S.L. in the mouth and took out a knife. She kicked him in the groin, jumped over a fence, and fled to Virtua Hospital's emergency room. A look-out for a drug set, Elizabeth Holmes, saw an unidentified person on the ground and a male figure dragging that person into a lot, and she assumed that two men were fighting.

Thirty minutes or so later, defendant walked up to the porch where Holmes and others were situated, and stated he was fighting with a man over a counterfeit fifty-dollar bill. Holmes, who has known defendant since childhood, observed blood on his sneakers and t-shirt. After learning S.L. was injured that evening, Holmes surmised that defendant was probably the culprit. After initially providing an alias, Holmes told Officer James that she observed a man drag someone the night S.L. was assaulted but Holmes could not tell if it was S.L. After obtaining a photograph of defendant at the police station, Detective James showed it to Holmes, and she identified defendant as the man depicted in the photograph. She clarified that she did not observe defendant dragging anyone on the night of the crime.

5

Two days later, since S.L. was unconscious, a family member consented to her undergoing a sexual assault examination by the Camden County Sexual Assault Response Team. S.L.'s underwear and swabs from her external genitals, vagina, anus, rectum, and fingernails were sent for testing. The Response Team photographed S.L.'s swollen black eyes, "lacerations everywhere" on her face and head, puncture wounds on her ears, and abrasions on her hip, coccyx, and fingers. The Team thought the lacerations were caused by a "blunt object" or, "knife or something sharp."

S.L. was transferred to Cooper Hospital for seven days where she was sedated and intubated for respiratory failure. She was diagnosed with traumatic cerebral edema secondary to subdural hematoma, traumatic rupture of the left globe, four bilateral ear lacerations, left rib fractures, a collapsed lung, a spleen laceration, a nasal fracture, and loss of teeth. Her mental abilities were also impaired, according to her sister's testimony. Two days following the assault, S.L. told police that she was attacked and sexually assaulted by two black males, and no weapon was involved. At that time, a nurse told a police officer that S.L. was not sexually assaulted. Detective Wachter investigated the crime scene and obtained surveillance footage from the area, but "nothing of substance" was found.

A-0413-16T4

On September 17, 2014, Jose Santiago appeared at the Camden County Prosecutor's Office and claimed he had information about the assault after seeing S.L. on a flyer that morning, issued by the Camden police, offering a $1000 reward. Although he was assured his statements were being made in confidence, and he would not have to testify, Santiago claimed the police surreptitiously recorded his conversation. He stated that he was walking in the area at the time the assault occurred, when he encountered defendant and Miguel Nunez. Defendant told Santiago that a man owed him money, he saw his girlfriend (S.L.) and beat her, requiring her to seek treatment at Virtua Hospital. Defendant ostensibly told Santiago he got blood on his sneakers and "knock[ed] her out." Santiago told investigators that defendant and Nunez dragged S.L. into an alleyway. Notably, five days before making his statement, Santiago was arrested for resisting arrest, but the charge was dismissed.

Seven months later in April 2015, Santiago returned to the Camden County Prosecutor's Office to recant his prior statement because his name appeared in court documents, upsetting him. At trial, Santiago testified that he lied on September 17 to detectives, and defendant never spoke to him about the incident. He also testified that he falsely accused defendant because Santiago was angry at Nunez and his mother for causing him to be arrested on three

7

separate occasions. Santiago relayed to detectives initially "what people in the neighborhood were saying." His redacted statement was played for the jury following a hearing pursuant to State v. Gross, 121 N.J. 1 (1990).

A search warrant executed on September 18, 2014 at defendant's home resulted in the seizure of a pair of his sneakers and boxer shorts. S.L. was determined to be the source of the DNA profile from defendant's right sneaker. That same day, a search warrant was also executed at Nunez's home. One of his sneakers found in the search tested positive in a presumptive blood test. A bag filled with a suspected Controlled Dangerous Substance (CDS) was also uncovered. Later that day, defendant was interviewed at the Camden County Metro Police Department and waived his Miranda[3] rights. Initially, he contended that Nunez assaulted S.L. because she tried to buy drugs from him with a counterfeit bill. Defendant claimed he knew S.L., and described her as a "scared type." He went so far to say that he wanted to help her, but he was restrained from doing so by Abdullah, a friend of S.L. In fact, defendant told the officers he saw Nunez strike S.L. with a brick to her head, and witnessed blood gushing from her eyes.

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0413-16T4

Ultimately, defendant admitted "touching her a little bit" meaning that he kicked S.L. in her side, arm, and back after he claimed Nunez dragged her into the alley and pulled her pants down. Defendant also admitted to "moving her a little bit" as he tried to assist Nunez in getting his money back from S.L. and queried her, "[w]here's the money at?" Defendant claimed the altercation lasted forty-five minutes to one hour, and he denied sexually assaulting her. According to defendant, Nunez sold fake drugs to S.L. and in return, she gave him a phony fifty-dollar bill that Nunez confronted her about. After Nunez hit S.L. with a brick, defendant responded, "get off of the lady, what are you doing, over a couple of dollars, for real? . . . Mike stop, stop, stop." In his statement to police, defendant alleged that Nunez continued to strike S.L., defendant tried to stop him, but Abdullah restrained defendant, assuming he was going to take part in the assault. Defendant further contended that he and Abdullah fought, defendant was slammed to the ground, and sustained abrasions to his elbow, knee, and a "blood blister type abrasion" to his palm.

9

Defendant's YSTR DNA profile[4] matched the YSTR DNA profile[5] taken from S.L.'s genitals and underwear, and his minor DNA profile matched her fingernail sample. Nunez was excluded as a DNA source.

After his arrest, a grand jury indicted defendant, charging him with first-degree robbery, N.J.S.A. 2C:15-1; second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-1 and 15-1; first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1) or (2); first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(3), (5) or (6); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree possession of a weapon, a brick, for an unlawful purpose, N.J.S.A. 2C:39-4(d); and fourth-degree possession of a weapon, a brick, N.J.S.A. 2C:39-5(d).

At trial, S.L.'s testimony was equivocal according to defendant.[6] She initially denied the assault, but later testified that she was injured in "a car

---

[4] Brett Hutchinson, a forensic scientist employed by the New Jersey State Parole Office of Forensic Sciences, testified that a DNA profile is based upon statistics provided by an FBI database.

[5] A DNA profile is compared to the general population and analyzed to ascertain the frequency of occurrence in the general population. Hutchinson testified that a YSTR focuses on the Y chromosome that only appears in males who have an XY chromosome profile, since females have an XX chromosome profile. Therefore, if you are looking for a male DNA profile, the focus is on the Y chromosome, passed down from father to son.

[6] S.L. had charges pending against her for possession of drug paraphernalia, assault on a police officer, and resisting arrest.

accident or something, or beaten up by somebody" and "was raped." She recalled being attacked by a 5'7" tall black male with "real dark skin," in his early twenties, who "took [her] around the corner," punched her in the face, and sexually assaulted her. In contrast to her statement to the police, she testified at trial that the attacker had a knife. She also testified that a Hispanic man was present but did not offer her any assistance. She also claimed that a third, unidentified individual was also present. Defendant was tried alone and did not testify.

## II.

Defendant's contentions in Points I, I(A), I(B), II, and III are raised for the first time on appeal and are therefore subject to review for plain error, that is, error "clearly capable of producing an unjust result." R. 2:10-2; see also State v. Munafo, 222 N.J. 480, 488 (2015). A conviction will be reversed under this standard only if the error is "sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached[.]" State v. Taffaro, 195 N.J. 442, 454 (2008) (quoting State v. Macon, 57 N.J. 325, 336 (1971)).

We first turn to defendant's contention in Point I and I(A) that the trial court's charge was flawed in failing to instruct the jury on accomplice liability.

He asserts that this deficiency deprived him of a fair trial because his defense relied on the theory that he could not be held liable for co-defendant Nunez's conduct without possessing the requisite mens rea. Defendant argued that although he was a participant in the incident, Nunez was the one who "seriously" assaulted S.L., and defendant did not possess a weapon, citing State v. Bielkiewicz, 267 N.J. Super. 520, 528 (App. Div. 1993) (holding the judge's instructions must "carefully impart to the jury the distinctions between the specific intent required for the grades of the offense.").

In assessing the propriety of the jury charge, we examine the entire charge to see whether it was ambiguous or misleading or whether it misinformed the jury of the law. State v. R.B., 183 N.J. 308, 324 (2005). Generally, except for plain error under Rule 1:7-2, a defendant waives the right to contest an instruction on appeal "if he does not object to the instruction." State v. Torres, 183 N.J. 554, 564 (2005). When a jury instruction follows the model jury charge, although not determinative, "it is a persuasive argument in favor of the charge as delivered." State v. Angoy, 329 N.J. Super. 79, 84 (App. Div. 2000). However, because of their importance in the trial proceeding, "erroneous instructions on material issues are presumed to be reversible error . . . ." State

v. Lopez, 187 N.J. 91, 101 (2006) (quoting State v. Marshall, 173 N.J. 343, 359 (2002)).

The accomplice liability statute states in pertinent part:

> a.  A person is guilty of an offense if it is committed . . . by the conduct of another person for which he is legally accountable . . . .
>
> b.  A person is legally accountable for the conduct of another person when:
>
>     . . . .
>
> (3)  He is an accomplice of such other person in the commission of an offense;
>
>     . . . .
>
> c.  A person is an accomplice of another person in the commission of an offense if:
>
> (1)  With the purpose of promoting or facilitating the commission of the offense; he
>
> (a)  Solicits such other person to commit it;
>
> (b)  Aids or agrees or attempts to aid such other person in planning or committing it; or
>
> (c)  Having a legal duty to prevent the commission of the offense, fails to make proper effort so to do; or
>
> (2)  His conduct is expressly declared by law to establish his complicity.
>
> [N.J.S.A. 2C:2-6.]

13

"When a defendant might be convicted as an accomplice, the trial court must give clear, understandable jury instructions regarding accomplice liability." State v. Walton, 368 N.J. Super. 298, 306 (App. Div. 2004). Here, defendant asserts that his defense was based upon a vicarious liability theory because he did not intend for S.L. to be seriously injured, and Nunez was the one who brutally attacked her. For the first time on appeal, defendant contends that State v. Cook, 300 N.J Super. 476, 479 (App. Div. 1996), is controlling because Cook was tried for murder separately from the co-defendant. In contradistinction to this case, an accomplice liability charge was given to the jury, but we reversed the trial court because: "The jury should likewise have been advised in unequivocal terms that, depending on its view of the evidence, it could decide that the liability of Cook was different from that of [the co-defendant] because each had a different state of mind." Id. at 487-88. The State contends that the accomplice charge is not applicable here because neither the indictment nor the State alleged defendant was responsible for the conduct of another, i.e. Nunez. Further, S.L. testified that there was only one attacker, and that the Hispanic male witnessed the crime, but did not touch her. Holmes corroborated S.L.'s testimony by recounting that she saw one person laying on the ground and one male figure dragging that person.

The only evidence presented at trial to support defendant's theory that Nunez solely attacked S.L. was defendant's statement to the police. Unlike the facts in Bielkiewicz, where the trial court failed to charge the jury that it could find one defendant guilty of murder as a principal and the other defendant guilty of aggravated manslaughter, manslaughter, or assault as an accomplice, here, defendant and Nunez were charged with the same offenses and the same degrees of culpability. Bielkiewicz, 267 N.J. at 531. Thus, defendant's reliance upon Cook and Bielkiewicz are factually distinguishable, and we are not persuaded by his arguments.

To establish guilt of first-degree robbery, the State was required to prove defendant intended to commit theft, and "the theft must [have] proceed[ed] or [been] coterminous with the use of force." The jury was further instructed that if it found defendant "formed the intent to commit the theft after he used force, then he could not be guilty of robbery."

For the first time on appeal, defendant also argues that the jury instructions and verdict sheet were ambiguous, generating uncertainty as to whether the jury based its conviction on committing serious bodily injury or for possessing a deadly weapon. A unanimity instruction requires unanimous agreement as to each element of the offense. State v. Gentry, 183 N.J. 30, 33

15

(2005).  Ordinarily, a general jury instruction requiring unanimity suffices in directing the jury that it must unanimously agree on the specific predicate of a guilty verdict.  State v. Cagno, 211 N.J. 488, 516-17 (2012).

The judge instructed the jury by reading from the indictment first, stating defendant was charged with "committing a theft upon [S.L.]" during which he "purposefully inflicted or attempted to inflict serious bodily injury and/or was armed with, used or threatened the immediate use of a deadly weapon . . . ."  Despite the use of the phrase "and/or," the charge required the jury to unanimously determine whether defendant purposely attempted to inflict serious bodily harm upon S.L., which is a component of first-degree robbery and second-degree aggravated assault but not the weapons offenses.  Both coalesced into a unanimous jury verdict.  There was no danger of a fragmented verdict here, and therefore, a specific unanimity charge was not required.  See, e.g., State v. Ghandi, 201 N.J. 161, 192 (2010).  Thus, regardless of the "and/or" phrase in the charge, the jury here found defendant guilty of robbery, and we find no error.

### III.

We next consider defendant's argument in Point I(C) that the trial judge erred by failing to instruct the jury on the elements of theft, N.J.S.A. 2C:20-3,

16

as a lesser-included offense of robbery, N.J.S.A. 2C:15-1. Defendant contends the charge was required because arguably, the theft here occurred after the assault, and the jury could have found defendant did not intend to commit a theft until after the assault occurred. In denying defendant's request, the judge ruled that it was inappropriate to charge theft as a lesser-included offense because defendant admitted to kicking S.L., and finding "there's simply no rational jury that could find on the lesser included charge."

Applying the plain error standard, we must first determine if the court erred by failing to give the instruction and, if it did, whether the failure "was clearly capable of producing an unjust result such that a reasonable doubt is raised as to whether the error led the jury to a result it otherwise might not have reached." State v. Jenkins, 178 N.J. 347, 361 (2004) (quoting State v. Brims, 168 N.J. 297, 306 (2001)). To determine whether a lesser-included offense charge is appropriate, a court must find the offense "satisf[ies] the definition of an included offense set forth in N.J.S.A. 2C:1-8(d) and . . . that there be a rational basis in the evidence to support a charge on [the] included offense." State v. Maloney, 216 N.J. 91, 107 (2013) (quoting State v. Thomas, 187 N.J. 119, 131 (2006)). For the reasons that follow, we are convinced that the trial judge

correctly determined that there was no rational basis to instruct the jury on theft.

Following argument from counsel, the trial court stated:

> Here I find the facts of this case more compelling than those in Cassady[7] with respect to, not only did we have a threat of force here, but looking at the victim and the injuries sustained, defendant's acknowledgement that at least that he kicked the victim and helped search for the money, that there's simply no rational jury that could find on the lesser included charge. Based upon the direction of the Cassady case, I'm going to deny the request to charge theft.

We are satisfied that there was a rational basis for not charging theft, and no error was committed by the trial judge. "The mere possibility of an unjust result is not enough. To warrant reversal . . . an error [in the charge] must be sufficient to raise a 'reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (citation omitted) (quoting Jenkins, 178 N.J. at 361).

IV.

In addressing Point II of defendant's brief, for the first time on appeal he contends that Santiago's trial testimony that other people in the neighborhood

---

7 State v. Cassady, 198 N.J. 165, 169 (2009). The Supreme Court held that the trial court properly denied defendant's request for a jury instruction on the lesser-included offense of theft where defendant threatened a bank teller by demanding money and vaulted a seven-foot partition into the teller's area when she refused to produce same.

implicated defendant in the crime constituted inadmissible hearsay. We disagree that error was committed on this issue. The purpose of the subject testimony was relevant as to the issue of Santiago's credibility, since it contradicted his conflicting statements to police. We disagree with defendant's assertion that his due process rights were violated and the Rules of Evidence were disregarded because the testimony was not offered for the purported truth of the matter asserted. Further, Santiago's testimony was not objected to, and served a non-hearsay purpose, i.e. the implied assertion that defendant may have been involved in the subject crimes. There was no prejudicial or plain error in admitting Santiago's testimony.

## V.

Next, defendant argues in Point IV that he was penalized for exercising his right to remain silent, that there was double counting relative to the harm inflicted upon the victim, and that his sentence was manifestly excessive. Defendant makes no showing that his silence had an inflammatory effect on the judge or jury, and we find no error.

As to the double-counting argument, we note that, generally, a trial court may not "double-count" aggravating factors in sentencing. In other words, if the court applies certain aggravating factors in setting an extended-term

sentence, it may not later also consider those factors in balancing the aggravating and mitigating factors. State v. Vasquez, 374 N.J. Super. 252, 267-68 (App. Div. 2005). However, the judge did not impermissibly double-count the aggravating factors. Defendant had prior convictions in excess of those required to sentence him to an extended term which the judge considered. Unlike Vasquez, the judge here did not utilize defendant's prior convictions in evaluating the aggravating and mitigating factors under N.J.S.A. 2C:44-1. Indeed, the judge stated that: "The force used on the victim in this case was extremely brutal and depraved . . . [e]vidence presented at trial, including before and after photographs of [S.L.] reflected that her face was unrecognizable following this assault."

After considering letters from defendant's significant other, family, and church members, the judge found that his character was inconsistent with the accolades attributable to him in those letters, and "rather is indicative of conduct of a violent predator." In recounting the evidence presented, the judge further reasoned that defendant "today for the first time expressed remorse for what occurred," that he "has no respect for the value of human life[,]" and that "his only remorse is that he was caught for this vicious assault."

A-0413-16T4

We review a "trial court's 'sentencing determination under a deferential [abuse of discretion] standard of review.'" State v. Grate, 220 N.J. 317, 337 (2015) (quoting State v. Lawless, 214 N.J. 594, 606 (2013)); see also State v. Pierce, 188 N.J. 155, 169-70 (2006) ("On appellate review, the court will apply an abuse of discretion standard to the sentencing court's explanation for its sentencing decision within the entire range."). We affirm a sentence if: (1) the trial court followed the sentencing guidelines; (2) its findings of fact and application of aggravating and mitigating factors were based on competent, credible evidence in the record; and (3) the application of the law to the facts does not "shock[] the judicial conscience." State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). When reviewing a trial court's sentencing decision, we will not "substitute [our] judgment for that of the sentencing court." State v. Fuentes, 217 N.J. 57, 70 (2014).

Here, the judge cited defendant's remorse within the context of the evidence, jury's findings, the letters, and his criminal history that includes "four Superior Court convictions," and two "Municipal Court convictions." The judge also specifically mentioned that although he found aggravating factor two applied, "in order to prevent any risk of double counting any factor which may

21

be considered in this conviction, I am not placing any significant weight on this factor." Thus, we are satisfied that there was no double-counting.

VI.

Defendant asserts in Point IV(C) that the judge abused his discretion in imposing consecutive sentences because the crimes were not independent of each other, and involved "a single period of aberrant behavior" with "a single victim." He maintains that the judge failed to conduct a proper analysis of the Yarbough[8] factors by concluding that "because the conduct resulting in the conviction for robbery of [S.L.] is a separate and distinct crime from the criminal restraint conviction[,]" that the restraint was a "separate and distinct act," and "there should be no free crimes." We disagree.

While there are no statutorily set rules for imposing consecutive sentences, the Court in Yarbough, provided the following guidelines:

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
>
> (3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

---

[8] State v. Yarbough, 100 N.J. 627 (1985).

(a) the crimes and their objectives were predominantly independent of each other;

(b) the crimes involved separate acts of violence or threats of violence;

(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous.

[Yarbough, 100 N.J. at 643-44.]

A sentencing court applies these factors "qualitatively, not quantitatively." State v. Carey, 168 N.J. 413, 427 (2001). Thus, a court may impose consecutive sentences "even though a majority of the Yarbough factors support concurrent sentences." Id. at 427-28; see, e.g., State v. Molina, 168 N.J. 436 (2001) (finding consecutive sentences were warranted despite the presence of only one Yarbough factor); see also State v. Swint, 328 N.J. Super. 236, 264 (App. Div. 2000) (holding concurrent sentences were not mandated even where the crimes were connected by a "unity of specific purpose . . . and were somewhat interdependent of one another, and were committed within a short period of time of one another . . . .") (internal quotation marks omitted).

VII.

We next address whether the fifty-year sentence imposed is manifestly excessive. At sentencing, the trial judge found that defendant[9] was eligible for an extended term of imprisonment pursuant to N.J.S.A. 2C:44-3(a). The judge relied upon defendant's extensive criminal history dating back to 2010 that included two convictions for drug-related crimes, including distribution on or near a school zone in violation of N.J.S.A. 2C:35-7, and a violation of probation. The trial judge weighed the prior convictions as support for the extended term. We review the trial court's sentencing decisions under an abuse of discretion standard. Pierce, 188 N.J. at 166 (citing Roth, 95 N.J. at 364-66). "Appellate review of a sentence is restricted to whether the determination of the sentencing factors was appropriate, whether the determination was supported by competent evidence in the record, and whether the sentence is so unreasonable that it shocks the judicial conscience." State v. Paduani, 307 N.J. Super. 134, 148 (App. Div. 1998). When reviewing a sentence, we must ensure that the trial court followed

---

[9] Defendant was twenty-five years old at sentencing. The judge did not consider defendant's two prior convictions in evaluating the aggravating and mitigating factors under N.J.S.A. 2C:44-1. Noting that the force used on S.L. was "extremely brutal and depraved," and "the beating extended over a period of, at a minimum forty-five minutes . . ." it was appropriate for the judge to consider defendant's criminal record as a whole when determining the length of the sentence.

the sentencing guidelines promulgated in the criminal code.  Roth, 95 N.J. at 366.  Specifically, we must (1) "require that an exercise of discretion be based upon findings of fact that are grounded in competent, reasonably credible evidence"; (2) "require that the factfinder apply correct legal principles in exercising its discretion"; and (3) modify sentences only when the facts and law show such a "clear error of judgment that [the sentence] shocks the judicial conscience."  Id. at 363, 364.

A reviewing court must also make sure that sentencing guidelines were followed, determine that findings on aggravating and mitigating factors are based on the evidence, and decide whether application of the guidelines makes a particular sentence clearly unreasonable.  Id. at 364-66.

A court may sentence a defendant to an extended term of imprisonment, upon application of the prosecutor, if:

> The defendant has been convicted of a crime of the first, second or third degree and is a persistent offender.  A persistent offender is a person who at the time of the commission of the crime is [twenty-one] years of age or over, who has been previously convicted of at least two separate occasions of two crimes, committed at different times, when he was at least [eighteen] years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later is within [ten] years of the date of the crime for which the defendant is being sentenced.

[N.J.S.A. 2C:44-3(a).]

The trial court must consider a four-part test when determining whether to give a defendant an extended sentence. State v. Dunbar, 108 N.J. 80, 89 (1987):

> First, the sentencing court must determine whether the minimum statutory predicates for subjecting the defendant to an extended term have been met. Second, the court must determine whether to impose an extended sentence. Third, it must weigh the aggravating and mitigating circumstances to determine the base term of the extended sentence. Finally, it must determine whether to impose a period of parole ineligibility.
>
> [Ibid.; Pierce, 188 N.J. at 168-72.]

The court did not violate the sentencing guidelines, fail to base its finding of aggravating and mitigating factors on competent and credible evidence, or impose sentences that shock our conscience. See Fuentes, 217 N.J. at 70; Bolvito, 217 N.J. at 228.

Having thoroughly reviewed the record, we are convinced that Point III and the remainder of defendant's arguments lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

26

A-0413-16T4